## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| LABORERS' PENSION FUND and | ) | |
| LABORERS' WELFARE FUND OF THE | ) | |
| HEALTH AND WELFARE DEPARTMENT | ) | |
| OF THE CONSTRUCTION AND GENERAL | ) | |
| LABORERS' DISTRICT COUNCIL OF | ) | |
| CHICAGO AND VICINITY, and JAMES S. | ) | |
| JORGENSEN, Administrator of the Funds, | ) | |
| Plaintiffs, | ) | Case No.  07 C 7097 |
| v. | ) | |
| | ) | Judge Manning |
| THE ROMAN GROUP, INC., an Illinois | ) | |
| corporation, FRIENDSHIP JANITORIAL | ) | |
| SERVICES, INC., an Illinois corporation, and | ) | |
| RANDALL L. GIRTON, individually, | ) | |
| | ) | |
| Defendants, | ) | |

## PLAINTIFFS' MOTION FOR ENTRY OF
## DEFAULT JUDGMENT IN SUM CERTAIN AND TO COMPEL AN AUDIT

NOW COME Plaintiffs Laborers' Pension Fund and Laborers' Welfare Fund of the

Health and Welfare Department of the Construction and General Laborers' District Council of

Chicago and Vicinity and James S. Jorgensen, Administrator of the Funds (hereinafter "Funds"),

by and through their attorney, Patrick T. Wallace, and hereby move this Court to find Defendants

The Roman Group, Inc. ("Roman Group"), Friendship Janitorial Services, Inc. ("Friendship")

and Randall L. Girton ("Griton")(collectively, "Defendants") in default, enter judgment in sum

certain in favor of the Funds and against Roman Group and Friendship pursuant to Fed. R. Civ.

P. 54(b) on Counts I and II of Plaintiffs' Complaint and order the Defendants to submit and pay

current reports and submit the Companies' books and records to an audit for the period of

January 1, 2007 forward.  In support of this Motion, the Funds state as follows:

1.      The Funds filed their Complaint on December 18, 2007 seeking to compel Defendants to submit payment of amounts due on an audit for the period of June 28, 2006 through December 31, 2006, obtain and maintain a surety bond, submit and pay amounts due on current reports for the period of August, 2007 forward, and submit the Companies' books and records to an audit for the period of January 1, 2007 forward.

2.      Abode service of the Summons and Complaint on the individual Defendant Girton was effected on December 26, 2007.  Summons and Complaint were personally served on the Registered Agent of The Roman Group and Friendship Janitorial on January 7, 2008.  True and accurate copies of the Affidavits of Plaintiffs' Process Server are attached hereto as Exhibits A, B and C.

3.      Defendants have failed to answer or otherwise please.  Accordingly, Defendants are in default.

4.      Pursuant to Section 502(g)(2) of the Employee Retirement Income Security Act ("ERISA"), as amended, 29 U.S.C. § 1132(g)(2), Section 301 of the Labor Management Relations Act ("LMRA"), as amended, 29 U.S.C. §185, the Agreement, and the Funds' respective Agreements and Declarations of Trust, the Funds are entitled to judgment in the amount of $95,240.01 on Counts I and II of Plaintiffs' Complaint against Defendants Roman Group and Friendship as follows:

a.      $92,953.91 in unpaid contributions, dues, interest, liquidated damages, and audit costs due on the audit for the period of June 28, 2006 through December 31, 2006.  See Affidavit of Jim Fosco attached hereto as Exhibit D, ¶ 5.

b.    As set forth in the Declaration of Patrick T. Wallace filed contemporaneously herewith and attached hereto as Exhibit E, $2,286.10 in attorneys' fees and costs expended to date in this matter.

5.    There is no just reason for delay in entering judgment in sum certain in favor of the Plaintiffs and against Defendants on Counts I and II of Plaintiffs' Complaint. The claim for payment due on the reports is for a discrete time period and seeks recovery of a liquidated, undisputed amount which is now due and owing to the Plaintiffs. Accordingly, the entry of Judgment is appropriate pursuant to Fed. R. Civ. P. 54(b).

6.    Plaintiffs request that the Court order Defendants to obtain and maintain a surety bond in accordance with the terms of the Agreement. See Fosco Aff., paragraph 6.

7.    Plaintiffs further request that this Court order Defendants to submit and pay current benefit and dues reports for the period of August 2007 forward, submit the Companies' books and records to an audit for the period of January 1, 2007 forward, and retain jurisdiction to enforce further judgment in sum certain on Counts III, through VII of Plaintiffs' Complaint upon completion of the audit.

WHEREFORE, Plaintiffs respectfully request that Defendants The Roman Group, Inc., Friendship Janitorial Services, Inc. and Randall L. Girton be found in default, that judgment be entered in Plaintiffs' favor and against Defendants The Roman Group, Inc. and Friendship Janitorial Services, Inc. on Counts I and II of Plaintiffs' Complaint pursuant to Fed. R. Civ. P. 54(b) in the amount of $95,240.01 as follows:

a.    $92,953.91 in unpaid contributions, dues, interest liquidated damages, and audit cost due on the audit for the period of June 28, 2006 through December 31, 2006.

3

b.     $2,286.10 in attorneys' fees and costs expended to date in this matter.

c.     Ordering Defendants to pay post judgment interest in all amounts due from the date of judgment until the judgment is satisfied.

d.     Ordering Defendants to obtain and maintain a surety bond in accordance with the terms of the Agreement.

Plaintiffs further request that this Court order Defendants The Roman Group, Inc. and Friendship Janitorial Services, Inc. to submit and pay current benefit and dues reports for the period of August 2007 forward, submit their books and records to an audit for the period of January 1, 2007 forward and retain jurisdiction to enter further judgment in sum certain against Defendants The Roman Group, Inc., Friendship Janitorial Services, Inc. and Randall L. Girton on Counts III through VII of Plaintiffs' Complaint.

Respectfully submitted,

Laborers' Pension Fund, et al.

By:     /s/ Patrick T. Wallace

Date:  January 30, 2008

Office of Fund Counsel
111 W. Jackson Blvd., Suite 1415
Chicago, IL  60604
(312) 692-1540

4

AO 440 (Rev. 05/00) Summons in a Civil Action

# UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF ILLINOIS

**SUMMONS IN A CIVIL CASE**

LABORERS' PENSION FUND AND LABORERS'
WELFARE FUND OF THE HEALTH AND
WELFARE DEPARTMENT, ETC., ET AL.,

V.

THE ROMAN GROUP, INC., an Illinois
corporation, FRIENDSHIP JANITORIAL
SERVICES, INC., and RANDALL L. GIRTON, Ind.

CASE NUMBER:

ASSIGNED JUDGE:

DESIGNATED
MAGISTRATE JUDGE:

## 07 C 7097

**JUDGE MANNING
MAGISTRATE JUDGE BROWN**

TO: (Name and address of Defendant)

Randall L. Girton
11028 W. 167th Place
Orland Park, IL 60547

**YOU ARE HEREBY SUMMONED** and required to serve upon PLAINTIFF'S ATTORNEY (name and address)

Patrick T. Wallace, Jerrod Olszewski
Christina Krivanek, Amy N. Carollo, Charles Ingrassia
Office of Fund Counsel
111 W. Jackson Blvd., Suite 1415
Chicago, IL 60604

an answer to the complaint which is herewith served upon you, within _____ 20 _____ days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You must also file your answer with the Clerk of this Court within a reasonable period of time after service.

**Michael W. Dobbins, Clerk**

**(By) DEPUTY CLERK**

**December 19, 2007**

**Date**


EXHIBIT
A

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **LABORERS' PENSION FUND, ET AL** | | COURT DATE: |
| | PLAINTIFF(S) | Case No.<br>07 C 7097 |
| vs. | | |
| **THE ROMAN GROUP, INC, ET AL** | | AFFIDAVIT OF SERVICE:<br>**SUMMONS & COMPLAINT** |
| | DEFENDANT(S) | |

The undersigned, being first duly sworn, on oath deposes and says: That s(he) is now and at all times herein mentioned was a citizen of the United States, over the age of eighteen, not an officer of a plaintiff corporation, not a party to nor interested in the above entitled action, and is competent to be a witness therein.

On **Dec 26, 2007**, at **5:47 PM**, I served the above described documents upon **RANDALL L. GIRTON** as shown below:

**ABODE SERVICE** was made by leaving copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein: **ANTHONY GIRTON / SON** .

Said service was effected at **11028 W. 167TH PL, ORLAND PARK, IL 60547.**

**DESCRIPTION:**  Gender: **M**   Race: **WHITE**   Age: **20**   Hgt: **5'10"**   Wgt: **190**   Hair: **BLACK**   Glasses: **NO**

I declare under penalties of perjury that the information contained herein is true and correct.

**Karen Crohan, Lic #: 117-001119**
**Judicial Attorney Services, Inc.**
**2100 Manchester Rd., Ste 900**
**Wheaton, IL 60187**
**(630) 221-9007**

SUBSCRIBED AND SWORN to before me this 27th day of December, 2007

OFFICIAL SEAL
ROBERT D FAIRBANKS
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:06/08/10

NOTARY PUBLIC

CLIENT NAME:                                          ORIGINAL PROOF OF SERVICE                          TRACKING #
**Laborers Pension and Welfare Funds***                                                                      35559
**FILE #:**

AO 440 (Rev. 05/00) Summons in a Civil Action

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

### SUMMONS IN A CIVIL CASE

LABORERS' PENSION FUND AND LABORERS'
WELFARE FUND OF THE HEALTH AND
WELFARE DEPARTMENT, ETC., ET AL.,

V.

THE ROMAN GROUP, INC., an Illinois
corporation, FRIENDSHIP JANITORIAL
SERVICES, INC., and RANDALL L. GIRTON, Ind.

CASE NUMBER:

**07 C 7097**

ASSIGNED JUDGE:

**JUDGE MANNING
MAGISTRATE JUDGE BROWN**

DESIGNATED
MAGISTRATE JUDGE:

TO: (Name and address of Defendant)

The Roman Group, Inc.
c/o William H. Wentz, Registered Agent
184 Shuman Blvd., #250
Naperville, IL  60563

**YOU ARE HEREBY SUMMONED** and required to serve upon PLAINTIFF'S ATTORNEY (name and address)

Patrick T. Wallace, Jerrod Olszewski
Christina Krivanek, Amy N. Carollo, Charles Ingrassia
Office of Fund Counsel
111 W. Jackson Blvd., Suite 1415
Chicago, IL  60604

an answer to the complaint which is herewith served upon you, within _____20_____ days after service of this
summons upon you, exclusive of the day of service.  If you fail to do so, judgment by default will be taken against you for the
relief demanded in the complaint.  You must also file your answer with the Clerk of this Court within a reasonable period of time
after service.

**Michael W. Dobbins, Clerk**

**December 19, 2007**

(By) DEPUTY CLERK

Date



UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

**LABORERS' PENSION FUND, ET AL**

PLAINTIFF(S)

vs.

**THE ROMAN GROUP, INC, ET AL**

DEFENDANT(S)

COURT DATE:

Case No.
**07 C 7097**

AFFIDAVIT OF SERVICE OF:
**SUMMONS & COMPLAINT**

The undersigned, being first duly sworn, on oath deposes and says: That s(he) is now and at all times herein mentioned was a citizen of the United States, over the age of eighteen, not an officer of a plaintiff corporation, not a party to nor interested in the above entitled action, and is competent to be a witness therein.

On **Jan 07, 2008**, at **2:45 PM**, I served the above described documents upon **THE ROMAN GROUP, INC** as shown below:

**CORPORATE SERVICE** was made by leaving a true and correct copy of the documents with **WILLIAM WENTZ / REGISTERED AGENT**, an officer, managing agent or authorized agent of the within named company.

Said service was effected at **184 SHUMAN BLVD., STE 250, NAPERVILLE, IL 60563.**

**DESCRIPTION:**  Gender: **M**   Race: **WHITE**   Age: **60**   Hgt: **5'9"**   Wgt: 195   Hair: **BALD**   Glasses: **YES**

I declare under penalties of perjury that the information contained herein is true and correct.

*Craig Palmer*

**Craig Palmer, Lic #: 117-001119**
**Judicial Attorney Services, Inc.**
**2100 Manchester Rd., Ste 900**
**Wheaton, IL 60187**
**(630) 221-9007**

SUBSCRIBED AND SWORN to before me this 8th day of January, 2007

OFFICIAL SEAL
ROBERT D FAIRBANKS
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:06/08/10

NOTARY PUBLIC

CLIENT NAME:
**Laborers Pension and Welfare Funds***
**FILE #:**

ORIGINAL PROOF OF SERVICE

TRACKING #
35557

AO 440  (Rev. 05/00) Summons in a Civil Action

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

**SUMMONS IN A CIVIL CASE**

LABORERS' PENSION FUND AND LABORERS'
WELFARE FUND OF THE HEALTH AND
WELFARE DEPARTMENT, ETC., ET AL.,

CASE NUMBER:

V.

ASSIGNED JUDGE:

THE ROMAN GROUP, INC., an Illinois
corporation, FRIENDSHIP JANITORIAL
SERVICES, INC., and RANDALL L. GIRTON, Ind.

DESIGNATED
MAGISTRATE JUDGE:

# 07 C 7097

**JUDGE MANNING
MAGISTRATE JUDGE BROWN**

TO: (Name and address of Defendant)

Friendship Janitorial Services, Inc.
c/o William H. Wentz, Registered Agent
184 Shuman Blvd., #250
Naperville, IL  60563

**YOU ARE HEREBY SUMMONED** and required to serve upon PLAINTIFF'S ATTORNEY (name and address)

Patrick T. Wallace, Jerrod Olszewski
Christina Krivanek, Amy N. Carollo, Charles Ingrassia
Office of Fund Counsel
111 W. Jackson Blvd., Suite 1415
Chicago, IL  60604

an answer to the complaint which is herewith served upon you, within _____20_____ days after service of this
summons upon you, exclusive of the day of service.  If you fail to do so, judgment by default will be taken against you for the
relief demanded in the complaint.  You must also file your answer with the Clerk of this Court within a reasonable period of time
after service.

**Michael W. Dobbins, Clerk**

(By) DEPUTY CLERK

**December 19, 2007**

Date



EXHIBIT
C

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **LABORERS' PENSION FUND, ET AL** | COURT DATE: |
| PLAINTIFF(S) | Case No.<br>**07 C 7097** |
| vs. | |
| **THE ROMAN GROUP, INC, ET AL** | AFFIDAVIT OF SERVICE OF:<br>**SUMMONS & COMPLAINT** |
| DEFENDANT(S) | |

The undersigned, being first duly sworn, on oath deposes and says: That s(he) is now and at all times herein mentioned was a citizen of the United States, over the age of eighteen, not an officer of a plaintiff corporation, not a party to nor interested in the above entitled action, and is competent to be a witness therein.

On **Jan 07, 2008**, at **2:45 PM**, I served the above described documents upon **FRIENDSHIP JANITORIAL SERVICES, INC.** as shown below:

**CORPORATE SERVICE** was made by leaving a true and correct copy of the documents with **WILLIAM WENTZ / REGISTERED**, an officer, managing agent or authorized agent of the within named company.

Said service was effected at **184 SHUMAN BLVD., STE 250, NAPERVILLE, IL 60563.**

**DESCRIPTION:**  Gender: **M**  Race: **WHITE**  Age: **60**  Hgt: **5'9"**  Wgt: **195**  Hair: **BALD**  Glasses: **YES**

I declare under penalties of perjury that the information contained herein is true and correct.

*Craig Palmer*

**Craig Palmer, Lic #: 117-001119**
**Judicial Attorney Services, Inc.**
**2100 Manchester Rd., Ste 900**
**Wheaton, IL 60187**
**(630) 221-9007**

SUBSCRIBED AND SWORN to before me this 8th day of January, 2007

```
OFFICIAL SEAL
ROBERT D FAIRBANKS
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:05/08/10
```

NOTARY PUBLIC

CLIENT NAME:
**Laborers Pension and Welfare Funds***
**FILE #:**

ORIGINAL PROOF OF SERVICE

TRACKING #
35558

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| LABORERS' PENSION FUND, et al., | ) | |
|           Plaintiffs, | ) | Case No. 07 C 7097 |
| v. | ) | |
| | ) | Judge Manning |
| THE ROMAN GROUP, INC., an Illinois | ) | |
| corporation, FRIENDSHIP JANITORIAL | ) | |
| SERVICES, INC., an Illinois corporation, and | ) | |
| RANDALL L. GIRTON, individually, | ) | |
|           Defendants, | | |

### AFFIDAVIT OF JIM FOSCO

JIM FOSCO, being first duly sworn on oath, deposes and states as follows:

1.    I am a Field Representative employed by the Laborers' Pension Fund and the Laborers' Welfare Fund of the Construction and General Laborers' District Council of Chicago and Vicinity (hereinafter collectively referred to as the "Funds"), Plaintiffs in the above-referenced action.  My responsibilities include oversight of the collection of amounts owed by Defendants The Roman Group, Inc. (hereinafter "Roman Group" or the "Company" collectively).  This Affidavit is submitted in support of the Laborers' Funds' Motion for Entry of Default Judgment in Sum Certain and to Compel an Audit.  I have personal knowledge regarding the statements contained herein.

2.    On June 28, 2006, the Company signed an Independent Construction Industry Collective Bargaining Agreement ("Agreement") with the Construction and General Laborers' District Council of Chicago and Vicinity ("District Council") and Laborers' Local Union No. 6.  A true and accurate copy of the Agreement is attached hereto as Exhibit D-1.  Pursuant to the terms of the Memoranda, the Company is bound to the terms of the relevant collective bargaining


EXHIBIT
D

agreements incorporated by reference in the Agreement and the Funds' respective Agreements and Declarations of Trust.

3.      Pursuant to agreement, the Funds have been duly authorized to act as collection agents on behalf of the District Council for union dues owed to the District Council.

4.      The Agreement and the Funds' respective Agreements and Declarations of Trust to which the Company is bound require that the Company submit benefit reports and contribution payments by the tenth day of the following month.  Payments which are not received within thirty days of this date are assessed liquidated damages in the amount of 10 percent or 20 percent liquidated damages (on Pension, Welfare and Training Fund after June 1, 2007) of the principal amount of delinquent contributions, and interest at a rate of prime plus 2 percent as charged by the J.P. Morgan Chase Bank, N.A. from the date of delinquency forward.  The Agreement and the Funds' respective Agreements and Declarations of Trust also obligate the Company to submit its books and records to the Funds for periodic audits to determine benefit contribution compliance.  A copy of the relevant portions of the Agreement are attached as Exhibit D-2; a copy of the relevant portions of the Amended Agreement and Declaration of Trust creating the Laborers' Pension Fund are attached as Exhibit D-3; and a copy of the relevant portions of the Amended Health and Welfare Department of the Construction and General Laborers' District Council are attached as Exhibit D-4.

5.      An audit of the Company's books and records for the period of June 28, 2006 through December 31, 2006 has revealed the following amounts due:

| | |
|---|---|
| Welfare Fund | $43,036.74 |
| Liquidated damages | 4,303.67 |
| Interest | 4,590.78 |
| Pension Fund | 27,921.96 |

| | |
|---|---|
| Liquidated damages | 2,792.20 |
| Interest | 2,978.28 |
| Training Fund: | 980.73 |
| Liquidated damages | 98.07 |
| Interest | 104.66 |
| Union Dues | 3,165.38 |
| Liquidated damages | 316.54 |
| LECET | 288.45 |
| Liquidated damages | 28.85 |
| Interest | 30.76 |
| LDCLMCC | 692.28 |
| Liquidated damages | 69.23 |
| Interest | 73.81 |
| IAF Fund: | 461.52 |
| Liquidated damages | 46.15 |
| Interest | 49.24 |
| Cisco: | 57.69 |
| Liquidated damages | 5.77 |
| Interest | 6.15 |
| Audit Costs: | 855.00 |

Total   $92,953.91

A true and accurate copy of the audit is attached hereto as Exhibit D-5.

6.      The Agreement obligates the Company to obtain and maintain a surety bond to insure payment of future wages, pension and welfare contributions. The Company has failed to obtain and maintain a surety bond in accordance with the terms of the Agreement.

FURTHER AFFIANT SAYETH NOT.

_Jim Fosco_
Jim Fosco

Subscribed and sworn to before me
this  30   day of January 2008.

_Susan M. Diforti_
Notary Public

**"OFFICIAL SEAL"**
Susan M. Diforti
Notary Public, State of Illinois
My Commission Expires Oct. 5, 2008

3

# INDEPENDENT CONSTRUCTION INDUSTRY COLLECTIVE BARGAINING AGREEMENT

It is hereby stipulated and agreed by and between THE ROMAN GROUP INC. ("Employer") and the Construction and General Laborers' District Council of Chicago and Vicinity, Laborers' International Union of North America ("Union"), representing and encompassing its affiliated Local Unions, including Local Nos. 1, 2, 4, 5, 6, 25, 75, 76, 96, 118, 149, 152, 225, 269, 288, 582, 681, 1001, 1035, 1092, together with any other Local Unions that may come within the Union's jurisdiction ("Local Union"), and encompassing the geographic areas of Cook, Lake, DuPage, Will, Grundy, Kendall, Kane, McHenry and Boone counties, Illinois, that:

1.  **Recognition.** The Employer recognizes the Union as the sole and exclusive collective bargaining representative for the employees now and hereinafter employed in the Laborer bargaining unit with respect to wages, hours and other terms and conditions of employment. If majority recognition previously was established under Section 9(a) of the Act, it shall remain in effect. Otherwise, recognition under Section 9(a) of the Act shall automatically be granted to the Union without the need for a Board certified election upon the Union's demonstration that a majority of the employees have designated the Union as their exclusive bargaining representative. The Employer has not assigned its rights for purposes of collective bargaining with the Union to any person, entity or association, and hereby revokes its prior assignment of bargaining rights, if any. The Employer further voluntarily elects not to assign such bargaining rights to any person, entity or association during the term of this Agreement or any extension thereof, without written approval from the Union. The Employer shall abide by this Agreement, and extensions hereof, provided that it employs at least one Laborer during the term of this Agreement.

2.  **Labor Contract.** The Employer affirms and adopts the applicable Collective Bargaining Agreements, as designated by the Union, between the Union and the Concrete Contractors Association of Greater Chicago, G.D.C.N.I/C.A.W.C.C., the Chicago Demolition Contractors' Association, the Illinois Environmental Contractors Association, the Chicago Area Rail Contractors Association, the Chicago Area Scaffolding Association, the Chicago Area Independent Construction Association, and all other employer associations with whom the Union or its affiliated Local Unions has an agreement. If the applicable collective bargaining agreement(s) expire during the term of this Agreement, any limitation on the right to strike shall also expire until a new agreement has been established, which shall be incorporated retroactively herein. It is further agreed that where the Employer works within the geographic jurisdiction of the Union's affiliated Local Unions that have negotiated an association agreement effective within the Local Union's jurisdiction, then the Local Union agreement is herein specifically incorporated into this Agreement and shall supersede the area-wide standard association agreements within the locality for which it is negotiated in the case of any conflict between them. Notwithstanding the foregoing, this Agreement supercedes all contrary terms in either the Local Union or area-wide association agreements.

3.  **Total economic increase.** The Employer shall pay its employees a total economic increase of $2.90 per hour effective June 1, 2006; $3.00 per hour effective June 1, 2007; $3.00 per hour effective June 1, 2008 and $3.10 per hour effective June 1, 2009, said amounts to be allocated between wages, fringe benefits and other funds by the Union in its sole discretion.

Page 1 of 4

**EXHIBIT**
**D-1**

4. **Dues Checkoff.** The Employer shall deduct from the wages of employees uniform working dues in the amount of 1.75% of gross wages, or such other amount as directed by the Union, and shall remit monthly to the designated Union office the sums so deducted, together with an accurate list showing the employees from whom dues were deducted, the employees' individual hours, gross wages and deducted dues amounts for the monthly period, not later than the tenth (10th) day of the month following the month for which said deductions were made. It is the parties' intention that these deductions comply with the requirements of Section 302(c)(4) of the Labor Management Relations Act of 1947, as amended, and such deductions be made only pursuant to written assignments from each employee on whose account such deductions are made, which shall not be irrevocable for a period of more than one year or beyond the termination date of the labor agreement, whichever occurs sooner.

5. **Work Jurisdiction.** This Agreement covers all work within the Union's work jurisdiction as set forth in the Union's Statement of Jurisdiction, receipt of which is hereby acknowledged, and as amended by the Union from time to time. The Statement of Jurisdiction is incorporated by reference into this Agreement. The Employer shall assign all work described therein to its Union-represented Laborer employees and acknowledges the appropriateness of this assignment. Neither the Employer nor its work assignments as required under this Agreement shall be stipulated or otherwise subject to adjustment by any jurisdictional disputes board or mechanism except upon written notice by and direction of the Union. The Employer, whether acting as a contractor, general manager or developer, shall not contract or subcontract any work to be done at the site of construction, alteration, painting or repair of a building, structure or other work and coming within the above-described jurisdiction of the Union to any person, corporation or entity not signatory to and covered by a collective bargaining agreement with the Union. This obligation applies to all tiers of subcontractors performing work at the site of construction. When the Employer contracts out or sublets any of the work coming within the above-described jurisdiction of the Union, it shall assume the obligations of any such subcontractor for prompt payment of employees' wages and other benefits required under this Agreement, including reasonable attorneys' fees incurred in enforcing the provisions hereof.

6. **Fringe Benefits.** The Employer agrees to pay the amounts that it is bound to pay under said Collective Bargaining Agreements to the Health and Welfare Department of The Construction and General Laborers' District Council of Chicago and Vicinity, the Laborers' Pension Fund (including Laborers' Excess Benefit Funds), the Fox Valley Benefit Funds, the Construction and General Laborers' District Council of Chicago and Vicinity Apprentice and Training Trust Fund, the Chicago Area Laborers-Employers Cooperation Education Trust ("LECET"), and to all other designated Union-affiliated benefit and labor-management funds, and to become bound by and be considered a party to the Agreements and Declarations of Trust creating said Trust Funds as if it had signed the original copies of the Trust instruments and amendments thereto. The Employer ratifies and confirms the appointment of the Employer Trustees who shall, together with their successor Trustees, carry out the terms and conditions of the Trust instruments. The Employer further affirms that all prior contributions paid to the Welfare, Pension and Training Funds were made by duly authorized agents of the Employer at all proper rates, and evidence the Employer's intent to be bound

by the Trust Agreements and Collective Bargaining Agreements in effect when the contributions were made, acknowledging the report form to be a sufficient instrument in writing to bind the Employer to the applicable agreements. Upon written notice to the Employer, the Union may increase the minimum surety bond to an amount not exceeding one hundred thousand dollars where necessary to ensure Employer compliance with its obligations.

Where Laborers covered by this Agreement perform work outside the Chicago area, the Employer shall, if covered under a local LIUNA-affiliated labor agreement in the area, contribute to the local fringe benefit funds in the amounts set forth in the local agreement. Otherwise, it shall remit all fringe benefit fund contributions in the amounts and to the funds as required under this Agreement.

7.    Wages and Industry Funds. The Employer shall pay all the negotiated hourly wages, fringe benefit and industry fund contributions it is bound to pay under the applicable Collective Bargaining Agreements, including, where applicable, contributions to the Chicago-Area LECET and designated labor-management and industry advancement funds, except that no contributions shall be made to MCIAF unless consented to and upon written direction from the Union. All additional wage rates, dues checkoff, and fringe benefits that are negotiated or become effective after May 31, 2006 shall be incorporated into this Agreement. The Union expressly reserves its sole right to allocate and apportion each annual total economic increase.

8.    Contract Enforcement.  All grievances arising hereunder shall, at the Union's discretion, be submitted to the Chicago District Council Grievance Committee for final and binding disposition in lieu of another grievance committee. Should the Employer fail to comply within ten (10) days with any binding grievance award, whether by grievance committee or arbitration, it shall be liable for all costs and legal fees incurred by the Union to enforce the award. Notwithstanding anything to the contrary, nothing herein shall limit the Union's right to strike or withdraw its members because of non-payment of wages and/or fringe benefit contributions, failure by the Employer to timely remit dues to the Union, subcontracting in violation hereof, or non-compliance with a binding grievance award. The Employer's violation of any provision of this paragraph will give the Union the right to take any other lawful and economic action, including but not limited to all remedies at law or equity.  It is expressly understood and agreed that the Union's right to take economic action is in addition to, and not in lieu of, its rights under the grievance procedures. Where necessary to correct contract violations, or where no acceptable steward is currently employed, the Union may appoint and place a steward from outside the workforce at all job sites.

9.    Successors. In the event of any change in the ownership, management or operation of the Employer's business or substantially all of its assets, by sale or otherwise, it is agreed that as a condition of such sale or transfer that the new owner or manager, whether corporate or individual, shall be fully bound by the terms and conditions of this Agreement. The Employer shall provide no less than ten (10) days prior written notice to the Union of the sale or transfer and shall be obligated for all expenses incurred by the Union to enforce the terms of this paragraph.

    10.    Termination. This Agreement shall remain in full force and effect from June 1, 2006 (unless dated differently below) through May 31, 2010, and shall continue thereafter unless there has been given written notice, by certified mail by either party hereto, received no less than sixty (60) nor more than ninety (90) days prior to the expiration date, of the desire to modify or amend this Agreement through negotiations. In the absence of such notice the Employer and the Union agree to be bound by the new area-wide negotiated agreements with the applicable Associations incorporating them into this Agreement and extending this Agreement for the life of the newly negotiated agreements, and thereafter for the duration of successive agreements, unless and until timely notice of termination is given as provided above.

    11.    Execution. The Employer acknowledges and accepts the facsimile signatures on this contract as if they were the original signatures. The Employer further acknowledges receipt of a copy of the complete Joint Agreements.

Dated: _____10/28_____, 20_06_.


**ACCEPTED:**


Laborers' Local Union No. __6__

By: _____

CONSTRUCTION AND GENERAL
LABORERS' DISTRICT COUNCIL OF
CHICAGO AND VICINITY

By: _____
   Frank Riley, President & Secy.-Treas.

By: _____
   James F. Connolly, Business Manager


For Office Use Only:

_____


THE ROMAN GROUP, INC.
          (Employer)

FEIN No.: 20-3779477

By: RANDALL L GIRTON, PRESIDENT
    (Print Name and Title)

_____
    (Signature)

11028 W. 147th Place
    (Address)

ORLAND PARK, IL 60467
    (City, State and Zip Code)

(708) 226-9099
    (Telephone/Telefax)


Final 060306

JUNE 1, 2006 TO MAY 31, 2010

# AGREEMENT

between the

## CHICAGO AREA INDEPENDENT CONSTRUCTION ASSOCIATION

and the

## CONSTRUCTION AND GENERAL LABORERS' DISTRICT COUNCIL OF CHICAGO AND VICINITY

affiliated with the

## LABORERS' INTERNATIONAL UNION OF NORTH AMERICA

36



EXHIBIT
D-2
tabbies

## Article 4
## SUBCONTRACTING

**Paragraph 1.** On work covered by this Agreement, the contractor or subcontractor agrees to see that all subcontractors on work within the Union's jurisdiction on this job site adhere to the wages and fringes contained in this Agreement when the subcontract is let by the contractor or subcontractor. If, upon the Union's request, the subcontractor chooses to sign a current labor agreement with the Union (although such signing might not be required under Paragraph 1), then the contractor shall be relieved of any liability under this Paragraph 1.

**Paragraph 2.** The Employer agrees that it will not contract or subcontract any work covered by this Agreement to be done at the site of construction, alteration, painting or repair of a building, structure or other work, except to a person, firm or corporation that is party to the applicable collective bargaining agreement with the Union.

**Paragraph 3.** If an Employer, bound to this Agreement, contracts or subcontracts any work covered by this Agreement to be done at the jobsite of the construction, alteration, painting or repair of a building, structure or other work to any person or proprietor who is not signatory to this Agreement, the Employer shall require such subcontractor to be bound by all the provisions of this Agreement, or the Employer shall maintain daily records of the subcontractor's or the subcontractor's Employees jobsite hours and be liable for payments to the Health and Welfare Department of Construction and General Laborers' District Council of Chicago and Vicinity, the Laborers' Pension Fund, and the Construction and General Laborers' District Council of Chicago and Vicinity Joint Apprentice and Training Trust Fund.

8

## Article 5
## WAGES

**Paragraph 1.** The rates of wages exclusive of fringe benefits to be paid in this trade for the period June 1, 2006 to and including May 31, 2010, shall be as set forth below for the respective following classifications as further defined herein.

The wage rates include a total economic increase of $2.90 per hour effective June 1, 2006 to May 31, 2007 to be allocated between wages and fringe benefits by the Union in its sole discretion, for a wage rate of $31.55 per hour, which includes the dues deduction; June 1, 2007 to May 31, 2008, $3.00 per hour total economic increase to be allocated between wages, fringe benefits and other funds by the Union in its sole discretion; June 1, 2008 to May 31, 2009, $3.00 per hour total economic increase to be allocated between wages and fringe benefits by the Union in its sole discretion; June 1, 2009 to May 31, 2010, $3.10 per hour total economic increase to be allocated between wages, fringe benefits and other funds by the Union in its sole discretion. The foregoing allocations may include allocations to LECET and LDC/LMCC.

**Dosimeter Use:** A premium of One ($1.00) Dollar per hour shall be paid to any Laborer required to work with a dosimeter used for monitoring nuclear exposure or with any similar instrument or measuring device.

**Power Pac:** When a Laborer uses a power driven piece of equipment he shall be paid the rate of pay of the tool at the end of the power pac.

**Apprentice wages:** Apprentice Laborers shall be paid according to the following schedule:

Apprentices (1st 6 months) . . . . . . . . 60% of base rate:
Apprentices (2nd 6 months) . . . . . . . 70% of base rate:
Apprentices (3rd 6 months) . . . . . . . . 80% of base rate:
Apprentices (4th 6 months) . . . . . . . . 90% of base rate:
Apprentices (after 24 months) . . . . . . 100% of base rate:

9

Should the Union enter into an agreement with the Builders Association of Greater Chicago, the Mason Contractors Association of Greater Chicago, the Illinois Road and Transportation Builders Association, the Underground Contractors Association, the Fox Valley General Contractors Association, the Lake County Contractors' Association, or the Contractors Association of Will and Grundy Counties that provides an annual total economic increase different than the annual total economic increase set forth in this paragraph, then such rates shall be incorporated into the applicable portion(s) of this Agreement that correspond to the trade and geographic scope of such association agreement.

**Paragraph 2. WELFARE:** Beginning the period from June 1, 2006 to May 31, 2007, the Employer agrees to make Health and Welfare contributions of $7.46 per hour for each hour worked by all Employees covered by this Agreement in addition to the wages herein stipulated. This $7.46 per hour shall be paid to the Health and Welfare Department of Construction and General Laborers' District Council of Chicago and Vicinity or a designated appointee at the end of each month.

That for the periods June 1, 2007 to May 31, 2008; June 1, 2008 to May 31, 2009; June 1, 2009 to May 31, 2010; that on May 1 of each year, if able, but not later than June 1, the Union in its sole discretion, shall determine the amount of additional contributions to Welfare and/or Pension and Training to be allocated from the economic package for that year. (See Paragraph 1 above)

The Employer agrees to bound by the Agreements and Declarations of Trust establishing the Health and Welfare Department of Construction and General Laborers' District Council of Chicago and Vicinity, as well as any amendments thereto.

**Paragraph 3. PENSION:** Beginning June 1, 2006 the Employer agrees to make a pension contribution of $4.84 per hour for each hour worked by all Employees covered by this Agreement in addition to the wages and welfare

payments herein stipulated. This $4.84 per hour shall be paid to the Laborers' Pension Fund or to a designated appointee at the end of each month.

That for the periods June 1, 2007 to May 31, 2008; June 1, 2008 to May 31, 2009; June 1, 2009 to May 31, 2010; that on May 1 of each year, if able, but not later than June 1, the Union in its sole discretion, shall determine the amount of additional contributions to Welfare and/or Pension and Training to be allocated from the economic package for that year. (See Paragraph 1 above)

The Employer agrees to bound by the Agreements and Declarations of Trust establishing the Laborers' Pension Fund, as well as any amendments thereto.

The parties agree that the Employer shall make lump sum contributions to employee fringe benefit accounts, administered by the Trustees on behalf of each employee. It is further agreed that such contribution shall be accompanied by a breakdown of payment according to appropriate benefits.

The Trustees of the Welfare Fund and the Trustees of the Pension Fund shall, among other things, have authority to determine the type and amount of benefits to be provided in each of said funds, the eligibility rules governing entitlement to benefits, and whether and to what extent benefits are to be provided for covered Employees.

The failure of the Employer to contribute to the said Welfare or Pension Funds when the same is established, as provided herein, shall for the purposes of the remedies the Union may pursue, be deemed the same as the failure of the Employer to pay wages, and the Union shall be permitted to remove workers whom they represent for non-payment of such contributions, anything to the contrary in this Agreement notwithstanding.

A grace period of thirty (30) days shall be granted for Employers to submit reports and contributions as provided. Said reports and contributions not received during this grace period shall be assessed liquidated damages

10

amounting to ten (10%) percent of the amount of the contributions which are owed. The Employer acknowledges that the liquidated damages shall be used to defer administrative costs arising by said delinquency and acknowledges the costs to be actual and substantial, though difficult to ascertain. However, the Employer acknowledges these costs to be at a minimum of ten (10%) percent, waiving the necessity of any additional proof thereof. In addition, the delinquent contributions shall bear interest at a maximum legal rate of interest per annum from the due date until they are paid.

Further, in the event the Trustees refer the account to legal counsel for collection, the delinquent Employer shall be liable for reasonable attorneys' fees, and for all reasonable costs incurred in the collection process, including court fees, audit fees, etc.

Reasonable attorneys' fees shall mean: All reasonable attorneys' fees in the amounts for which the Trustees become legally bound to pay, including recovery of liquidated damages, interests, audit costs, filing fees, and any other expenses incurred by the Trustees.

The Trustees of the aforementioned Welfare and Pension Funds and the Union shall have the authority to audit the books and records of a participating Employer, either directly or through their authorized representative, whenever such examination is deemed necessary for the purpose of compliance with the provisions of this Agreement, including the obligation to remit Union Dues under Article 3.

Each participating Employer shall make its books and records available to the Trustees for such purpose. In the event the audit discloses that the Employer, during the period of the audit, has underpaid its contributions and/or wages, the Employer shall be liable for the costs of the examination, including but not limited to, audit fees and reasonable attorneys' fees. The Trustees' authority to waive any costs shall be governed by the terms of the Trust Agreement.

Paragraph 4. Appointment of Trustees to the Health and Welfare Department of Construction and General Laborers' District Council of Chicago and Vicinity and the Laborers' Pension Fund. The parties agree that the Employer-appointed trustees of the Health and Welfare Department of Construction and General Laborers' District Council of Chicago and Vicinity and the Laborers' Pension Fund and training and apprentice funds to which Employers are required to contribute shall be appointed solely by Employer associations that enter into collective bargaining agreements with the Union requiring contributions to such funds ("Signatory Associations"). It is further agreed that the Trust Agreements establishing such funds shall be amended to replace any Employer association that appoints a trustee and does not have a labor agreement with the Union, replacing it with a Signatory Association. The Union and Signatory Associations shall meet within 30 days of the effective dates of agreements covering a majority of Fund participants to review the appointment of Employer Trustees of the funds. It is agreed that the numbers of hours contributed by Employers represented by Signatory Associations compared to contributions by other Signatory Associations during the preceding year shall be the basis for assigning the number of trustee appointments. If such parties are unable to agree on the Signatory Associations to be responsible for appointments and the number of appointments to be made by each Signatory Association the dispute shall be submitted to expedited arbitration under Subpart D of the Policies and Procedures of the Federal Mediation and Conciliation Service.

Paragraph 5. Article III Section 2 of the trust agreements of the Health and Welfare Department of Construction and General Laborers' District Council of Chicago and Vicinity and the Laborers' Pension Fund shall be amended to include the following: "Association-appointed Trustees must be full-time employees of Contributing Employers within the Association's membership. A Contributing Employer shall be defined as an

amendments thereto, establishing the Chicagoland Laborers' Annuity Fund, a jointly-trusteed defined contribution plan providing a supplemental retirement benefit. Contributions to the Fund will be allocated in the Union's sole discretion from the total economic increase.

**Paragraph 9. SUPERVISORS:** To the extent permissible by the Internal Revenue Service or any Federal Act, and for the purposes of Paragraphs 2 and 3 of this Article for this Agreement only, the bargaining unit shall also include those persons in the employ of an Employer who are supervisors, as defined in the Labor Management Relations Act, as amended; and who at one time were whose behalf contributions were required to be made to the trust funds described in the aforesaid Paragraph 2 and 3 of this Article.

**Paragraph 10. Special Rules for Bonding.** An employer that is owned or managed, in whole or part, by an individual who currently has or previously had in the last ten (10) years ownership or principal managerial responsibility for another contributing employer that currently is or ceased doing business when delinquent to the Funds shall be required to post for the benefit of the Funds an additional cash bond or obtain a surety bond from a Fund-approved insurer in an amount equal to twice the amount of the other contributing employer's delinquency. This amount may be adjusted by the Benefit Fund Trustees for each individual employer. This bond shall be in addition to and separate from the bond required elsewhere in this Agreement.

## Article 6
## BONDING

**Paragraph 1.** All Employers shall procure, carry and maintain a surety bond in form and amount satisfactory to the Union, but not less than in the principal sum of $5,000.00, to guarantee payment of wages, Pension and Welfare Trust contributions, during the term of this

Employer that has employed an average of five (5) or more Laborers performing bargaining unit work for whom contributions have been made per month in each of the previous three (3) calendar years."

**Paragraph 6. Section 415 Excess Benefit Fund:** A Section 415 Excess Benefit Fund shall be established for the purpose of providing alternative benefit to any employees of the Employer who become unable to receive the entire amount of the accrued pension benefits to which they would be entitled under one or more of the pension plans sponsored by their Employer because of limitations established by Section 415 of the Internal Revenue Code. The Employer may be required and directed by the Board of Trustees of the Excess Benefit Fund to contribute a portion of its agreed-upon "pension" contribution to the Section 415 Excess Benefit Fund and shall not increase the Employer's cost beyond the amount that the Employer is obligated to contribute to the Laborers' Pension Fund and that the funding of the Section 415 Excess Benefit Fund shall be fully tax deductible to the Employer for Federal Income Tax purposes. The Employer hereby agrees that the Board of Trustees of any such Section 415 Excess Benefit Fund shall be authorized to determine each year the amount that will be contributed by the Employer and the amount to be credited to the account of any eligible retiree for payment in lieu of accrued benefits that would exceed the limits set by Section 415 of the Internal Revenue Code.

**Paragraph 7.** The Employer agrees to bound by the Agreements and Declarations of Trust, as well as any amendments thereto, establishing the Chicagoland Laborers' Vacation Fund, a jointly-trusteed vacation plan established for the purpose of providing income to members during their winter layoffs. Contributions to the Fund will be allocated in the Union's sole discretion from the total economic increase.

**Paragraph 8.** The Employer agrees to bound by the Agreements and Declarations of Trust, as well as any

Agreement. The bond shall be placed in the custody of the Pension and Welfare Funds.

Paragraph 2. If the Employer employs between seven (7) and ten (10) Laborers, the surety bond shall be increased to $15,000. If the Employer employs between eleven (11) and twenty (20) Laborers, the surety bond shall be increased to $25,000. If the Employer employs twenty-one (21) to forty (40) Laborers, the surety bond shall be increased to $35,000. If the Employer employs forty-one (41) or more Laborers, the surety bond shall be increased to $45,000.

Paragraph 3. Contractors shall be required to obtain an appropriate bond within thirty (30) days of executing this Agreement, which bond may also be posted in cash. Should the Employer fail to comply with the provisions of Paragraphs 1-3 of this Article, the Union may withdraw its employees or strike until such compliance occurs, and the Employer shall further be liable for all costs, including attorneys fees, incurred in enforcing these provisions.

Paragraph 4. The Employer shall give notice to the Union and the appropriate Fund Office in writing not later than ten (10) days after the occurrence of any of the following events relating to the Employer, occurring after the date hereof:

(a) Formation of Partnerships;
(b) Termination of business;
(c) Change of name commonly used in business operation;
(d) Change in form of business organization;
(e) Incorporation of business;
(f) Dissolution of corporation;
(g) Name and business organization of successor; and
(h) Admission to or withdrawal from any association operating as a multi-employer bargaining unit.

16

# Article 7
## INDUSTRY FUND

Paragraph 1. Each Employer shall pay into an industry advancement fund the amount of eight cents ($.08) for each hour worked for the Employer by those of his Employees covered by this Agreement. This payment shall be collected for and remitted only to funds as provided under written agreements between an employer association and the Union.

Each Employer shall pay into the Chicago-Area Laborers-Employers Cooperation and Education Trust ("LECET"), the amount of five cents ($.05) for each hour worked for the Employer by those of his Employees covered by this Agreement, or such additional amounts as the Union may in its sole discretion allocate from the annual total economic increase.

Each Employer shall pay into the Laborers' District Council Labor Management Cooperation Committee ("LDC/LMCC"), the amount of twelve cents ($.12) for each hour worked for the Employer by those of his Employees covered by this Agreement, or such additional amounts as the Union may in its sole discretion allocate from the annual total economic increase.

Paragraph 2. The Employer agrees to be bound by the Agreement and Declaration of Trust establishing the Industry Fund, as well as any amendments thereto, and agrees to be bound by all actions taken by the Trustees of said Industry Fund pursuant to said Agreement and Declaration of Trust and amendments thereto. The Employer agrees to be bound by the Agreements and Declarations of Trust establishing the LECET and LDC/LMCC, as well as any amendments thereto.

Paragraph 3. Inasmuch as the existence and utilization of this Industry Fund should result in increased construction and, therefore, in increased construction job opportunities for Employees, the Union agrees to cooperate in assuring that the contributions required by this

17

Article are in fact made by Employers bound by this Agreement.

## Article 8
## PARTICULAR WORK RULES AND CLARIFICATION OF CONDITIONS

**Paragraph 1.** Except as provided under paragraph 2 below, wages must be paid by payroll check and shall include a stub or statement showing the number of straight time and overtime hours worked and rate of pay. Failure on the part of the Employer to have sufficient funds at the bank to meet pay checks issued workers, shall deprive such Employers henceforth from the right to pay by checks and Joint Grievance Committee shall assess such Employer a sum equal to not less than the expense incurred in the collection of the amounts due because of such insufficient funds to meet checks so issued.

**Paragraph 2.** Direct Deposit: In lieu of paying wages by payroll check, the Employer may make payment by electronic bank draft if the employee voluntarily accepts such alternate method of payment. The Employer shall not mandate electronic banking as a condition of employment. Electronic wage payments must be transferred to the employee's bank account no later than the employee's regular pay day and at no cost to the employee. If payment is made by electronic bank draft, the Employee must also be provided a record of hours worked, rates of pay, and deductions made, at the same time and containing the same information as if wages were paid by payroll check.

If full wages are not timely transferred to the employee's account, the Employer shall pay the employee an additional four (4) hours pay for each day or portion thereof until full wages are received. Employers who vio-

18

late the provisions of these paragraphs shall be denied the use of electronic banking for wage payments.

**Paragraph 3.** The Union agrees that the Employees whom it represents will accept and demand the wages and fringe benefit payments set forth in this Agreement, and the employer agrees to pay the wages and fringe benefit payments herein stipulated.

**Claims for Shortages:** Claims by Employees for shortages must be made within three (3) weeks after shortage is discovered.

**Paragraph 4.** Payment by the Employer and acceptance by the Employee of less than the wage herein stipulated shall be a violation of this Agreement upon the part of each. Upon conclusive proof to the Joint Grievance Committee of such violation, the Employer shall immediately pay the unpaid balance due in accordance with the wage herein stipulated; and in addition thereto, shall pay the Joint Grievance Committee an amount equal to the penalties provided in the appropriate Article of General Conditions of this Agreement, but under no circumstances shall such penalties be less than fifty (50) percent of the amount of such pay shortage as just and liquidated damages because of such violation.

Upon conclusive proof that the Employer is guilty of paying less than the wages herein stipulated, then nothing in this Agreement shall be construed to take from the Union the right to remove workers it represents from the job, and henceforth to deny such Employer further right to the employment of its members.

Members of the Union who are found guilty of violation of this Agreement shall be dealt with by the Employer.

**Paragraph 5.** The Union reserves and shall have the right to remove its employees from any job upon the failure of the Employer to pay the wages due any of its Employees or fringe benefits which may be due by reason of the hours of employment.

19

# RESTATED AGREEMENT

### AND

# DECLARATION OF TRUST

#### CREATING

# LABORERS' PENSION FUND

With Amendments Through
May 31, 2002



EXHIBIT
D-3

(b)     To enforce the provisions of the Pension Plan and the rules and regulations adopted by the Trustees in a uniform manner with respect to individuals similarly situated.

(c)     To determine questions arising under the Pension Plan or this Agreement, including the power to determine the rights of Employees and their Beneficiaries, and their respective benefits, and to remedy ambiguities, inconsistencies or omissions.

## ARTICLE VII

## FUNDING PENSION PLAN BENEFITS

Section I.     IN GENERAL.  In order to fund the benefits provided under the Pension Plan, each Employer, for the period that it is obligated by a Written Agreement, shall make contributions to the Trustees at the times required by that agreement.  The rate of contributions shall be determined by the applicable Collective Bargaining Agreement or Participation Agreement, together with any amendments, supplements or modifications thereto.  Notwithstanding the preceding sentence, if an Employer is required to make contributions by reason of a Participation or other Written Agreement that is not a Collective Bargaining Agreement, the amount of its contributions shall be the same as the amount required by the Collective Bargaining Agreement in effect between the Employer Association and the Union which covers Employees performing similar work.  No

-24-

Employee shall be permitted to contract or otherwise agree with or permit his Employer to provide wage or benefit payments which do not conform with the amount of contributions required under the provisions of a Collective Bargaining Agreement or Participation Agreement and any such contract or agreement shall be null and void. It shall not be a defense to any claim by the Trustees or an Employee for payment of delinquent contributions from an Employer that such Employer has entered into an agreement with any Employee purporting to waive the Employee's right to strict compliance with the provisions of the applicable Collective Bargaining Agreement or a Participation Agreement. All contributions shall be paid in the manner and form required by the Trustees.

       Section 2.     DEFAULT IN PAYMENT OF CONTRIBUTIONS. Nonpayment by an Employer of any contributions when due shall not relieve any other Employer of his obligation to make payments. The Trustees may take any action necessary to enforce payment of the contributions and penalties due hereunder, including, but not limited to, proceedings at law and in equity. Any such action shall not prejudice the Union in any action it may wish to take on account of such nonpayment. The Trustees are authorized to establish a reasonable and lawful grace period by which contributions must be received; Employers making contributions that are not received before the expiration of said period and any Employer making late payments due under an installment agreement shall be assessed liquidated damages of 10% of the amount of the contributions which are owed. All Employers party to or otherwise bound by this Agreement acknowledge that the

liquidated damages will be used to defer administrative costs arising by said delinquency and acknowledge the costs to be actual and substantial though difficult to ascertain; however the Employers acknowledge these costs to be at a minimum of 10%, waiving the necessity of any additional proof thereof. In addition, the delinquent contributions and any payments owed by an Employer pursuant to an installment agreement, shall bear interest up to the prime rate of interest plus two points charged by the Fund's custodian bank (or any other bank selected by the Trustees)  or such other lawful amount as determined by the Trustees from the due date until totally satisfied. The Trustees are hereby given the power and authority to delegate the collection of contributions to a Collection Committee, which, in its discretion, may assess a lesser or greater amount or waive or suspend payment of liquidated damages, interest, audit fees or investigative costs in accordance with rules and procedures adopted by the Collection Committee  and to compromise claims for delinquent contributions and related  liabilities and collection costs where appropriate to settle cases favorably for the Fund. The Collection Committee may include trustees of the Laborers' Welfare Fund as members of the Committee.

In the event an Employer party to this Agreement or otherwise bound thereby becomes delinquent in his contributions or an installment agreement, or fails to post a bond as required, said delinquent Employer shall be liable for reasonable attorneys' fees and for all reasonable costs incurred in the collection process, including court fees, audit fees, investigative costs, etc. The term "reasonable attorneys' fees" as used herein shall mean all

attorneys' fees in the amounts for which the Trustees become legally obligated including recovery of liquidated damages, audit costs, filing fees and any other expenses incurred by the Trustees.

The Trustees are hereby given the power and authority, in their discretion, to require any Employer to deposit with the Trustees, in advance, as a guarantee for the payment of monthly contributions, an amount equal to three (3) times the monthly contributions of such Employer, as estimated by the Trustees. At the option of the Trustees the Employer shall furnish the Trustees, in lieu of any cash deposit, a bond in an amount not less than Five Thousand Dollars ($5,000.00) or in an amount consistent with the terms of the current collective bargaining agreements. In the event an Employer is repeatedly delinquent in its contribution payments to the Pension Fund, the Trustees have the power and authority to require that Employer to purchase a bond in excess of $5,000.00 or the amounts set forth in the current collective bargaining agreements, in an amount equal to three (3) times the highest monthly contributions of the Employer in the twelve months prior to any delinquency. The Trustees, in their discretion, may also waive the requirement of a cash deposit or a surety bond in lieu of a personal guaranty when such waiver is warranted.

Section 3.     REPORT ON CONTRIBUTIONS AND PRODUCTION OF RECORDS. The Employers shall make all reports on contributions required by the Trustees. Each Employer shall promptly furnish to the Trustees, on demand, the names of its employees, their social security numbers, the hours worked by each employee, and such

other information as the Trustees may reasonably require in connection with the administration of the Trust and Pension Plan. The Trustees may at any time have an audit made by an independent certified public accountant or its representatives of the payroll of any Employer in connection with the said contributions and/or reports. All Employers shall be required to maintain records in compliance with procedures developed and communicated by the Administrator from the beginning of such Employer's participation in the Pension Fund forward unless given written authorization by the Administrator upon request to destroy said record. The Administrator shall require the Employer to designate the classification of all of his employees and if the Employer fails to do so, the Trustees shall conduct an investigation for the purpose of determining the classification of such employees and the results of said investigation shall be conclusive. Attached hereto as Addendum A are the current collection policies concerning Scheduling of Audits and Retention and Production of Employer Records adopted by the Trustees.

## ARTICLE VIII

## FILING CLAIMS AND REVIEW OF DENIALS OF CLAIM

Section 1.     FILING OF A CLAIM.     Claims for the payment of any benefits provided by the Pension Plan shall be filed, in writing, in accordance with the Rules and Regulations set forth in Article 7 of the Pension Plan.

-28-

## ADDENDUM A

## RECORDS REQUIRED TO BE RETAINED BY EMPLOYERS
## AND PRODUCED FOR AUDITS

The following records shall be maintained and retained by all contributing employers to the Benefit Funds for at least six years from the contribution date and shall be produced for inspection and copying by an auditor of the Benefit Funds upon written request:

1.  Quarterly and annual payroll tax returns, including, but not limited to, federal quarterly form 941's, federal annual form W-2's, W-3's, 940's, 1099's and state quarterly unemployment returns (form UC-3).

2.  Payroll journals and/or registers which include or identify employees' social security numbers, hourly rates of pay, hours worked and the time period in which the work was performed.

3.  Individual earnings records for all employees of the employer not shown on payroll journals or registers, including social security number and work classification (or code or clock or ID number), hourly rates of pay, hours worked and the time period in which the work was performed.

4.  Cash disbursement journals and general ledgers.

5.  Copies of all contribution reports and proof of payment (canceled checks or records of canceled checks) of all contributions to the Laborers' Funds and to all other trade union fringe benefit funds to which the employer contributed.

6.  Copies of all dues records and proof of payment (canceled checks or records of canceled checks) of all union dues submitted to the Laborers' District Council.

7.  Records showing all amounts paid to all persons or entities that performed work for the employer as independent contractors or subcontractors, if any, including copies of any federal form 1099's issued by the employer.

8.  Daily time records filed by employees or supervisors.

9.  Source documents and lists of job codes and equipment codes.

10.  Certified payrolls for public sector jobs where such payrolls are required.

11.  Employee personnel files including, but not limited to, last known addresses and telephone numbers, any documents which demonstrate employees' job classifications and/or status as an apprentice, journeyman, foreman, superintendent, or supervisor. (Confidential medical records or other private records not relevant to the establishment of an employee's job classification shall not be disclosed.)

1

12.  Bank account statements and canceled checks from any account used in conjunction with the employer's business.

13.  If records of all hours worked, rates of pay and classifications are not provided in the records listed in items 1 through 10, the employer shall maintain monthly lists of all employees not shown on payroll records, showing Social Security number and work classification (or code or clock or ID number), rates of pay and hours worked.

Honor Roll Employers shall be required only to produce basic records needed by the Benefit Funds' auditors to do an audit, specifically items 1 through 7 above.  However, if an initial examination of such limited records discloses significant record keeping errors or failures to contribute, the auditor may request additional records listed above.  In the absence of evidence of a deliberate failure by an Honor Roll Employer to contribute on behalf of a bargaining unit employee, the rebuttable presumptions provided for in the attached Policy for Retention and Production of Employer Records shall not apply to such Honor Roll Employer.

Notwithstanding the foregoing, the Collection Committee or the Director of the Field Department may, in their discretion, determine that a full audit shall be done of any employer or that, where a sampling audit is to be conducted, specific records shall be produced.  The judgment of the trustees in interpreting and applying this policy shall be conclusive and binding on all parties.

Adopted January 9, 2002

# LABORERS' PENSION AND WELFARE FUNDS

## POLICY FOR RETENTION AND PRODUCTION OF EMPLOYER RECORDS

As Adopted by the Boards of Trustees
Effective as of April 1, 2006

WHEREAS, Section 209 of the Employee Retirement Income Security Act of 1974 , as amended ("ERISA"), 29 U.S.C. Section1059, requires employers obligated to contribute to employee benefit funds to maintain records with respect to its employees which are sufficient to determine benefits due to such employees of which may become due to them; and

WHEREAS, the Trustees of the Laborers' Pension Fund and the Trustees of the Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity (collectively, the "Benefit Funds") have the authority under their respective Trust Agreements to establish rules, regulations and policies regarding records which must be maintained by employers in order to administer the Benefit Funds; and

WHEREAS, the Trustees of the Benefit Funds have found that most contributing employers maintain proper records and make all required contributions to the Benefit Funds, nevertheless, there are employers who are bound by the Trust Agreements of the Benefit Funds who fail to maintain records which are adequate for the Funds to determine whether proper contributions have been made on behalf of eligible employees and that some of such employers do so deliberately in order to avoid their obligations to make such payments; and

WHEREAS, the practices of employers who fail to maintain records sufficient to enable the Benefit Funds to conduct thorough payroll audits cause their employees to lose valuable pension and welfare benefits and cause the Benefit Funds to lose contractually required contributions and investment earnings on those contributions; and

WHEREAS, the practices of employers who fail to maintain adequate records cause the Benefit Funds to incur substantial additional administrative and legal expenses in order to determine proper amounts owed to the Funds by such employers; and

WHEREAS, enforcement of a policy specifying the records required to be maintained and produced increases the ability of the Funds to prove the contributions owed by delinquent employers and thereby to provide proper credit to the employees and their beneficiaries;

NOW THEREFORE, the Trustees resolve that the following policies are adopted by the Benefit Funds effective as of March 1, 2002:

1. Except as otherwise provided herein, all contributing employers to the Benefit Funds shall maintain and make available for inspection and copying by an auditor of the Benefit Funds the records listed on Appendix A, attached hereto.

2. Any employer obligated to contribute to the Benefit Funds who fails to maintain and make available for inspection and copying to an auditor of the Benefit Funds the requisite records listed on Appendix A shall bear the burden of proof with respect to the exclusion of any employee from coverage by the collective bargaining agreement with the Union. In those cases where an employer asserts that an employee is excluded because he/she is a member of another bargaining unit, the employer must submit tangible evidence of that fact, e.g., a union membership card, contribution records maintained for the benefit funds of the other bargaining unit, commercial drivers' license if it is asserted that an employee is a truck driver rather than a laborer and workers' compensation policies, forms and applications listing an employee's job classification or other business records. The affidavit of an employer's representative or officer unsupported by documentary evidence shall not be sufficient to meet the employer's burden of proof. Affidavits solicited and obtained ex parte by an employer's representative from employees, for which there is no corroborative evidence in the form of records maintained in the ordinary course of business, shall not be sufficient to meet the employer's burden of proof.

3. When an employer has failed to maintain or make available the requisite records, there shall be a rebuttable presumption that any employee listed as a possible laborer by an auditor, Field Representative or attorney representing the Benefit Funds was a laborer. There shall also be rebuttable presumptions concerning the hourly rate and number of hours worked as follows: (a) that the employee was paid only $10.00 per hour if no record of wage rates was made by the employer, and/or (b) that the employee worked 72 hours per week if no record of the number of hours was maintained; whichever of these presumptions results in the higher amount of contributions shall be applied. When evidence exists that a different hourly rate was paid to employees of an employer that failed to maintain the required records, at the discretion of the Director of the Field Department, a different hourly rate may be presumed for purposes of determining the amount of contributions owed by the employer. If that evidence shows that the employer paid a rate lower than $10.00 per hour to any employees doing bargaining unit work, then that lower rate shall be presumed to be the actual rate paid to all employees for whom adequate records were not kept. Similarly, where evidence exists of a different number of hours worked, the Director may apply a different number of hours for determining the contributions owed, and this number of hours worked shall be presumed correct. All wages computed as provided in this paragraph shall be presumed to be paid as straight time wages regardless of the number of hours worked unless the employer has provided documentation, in the form required by the terms of this policy, showing that it followed the requirements of the Fair Labor Standards Act and/or the applicable collective bargaining agreement as to the payment of overtime.

4. An employer that fails to maintain the requisite records and fails to cooperate with the Trustees in establishing the paid wage rates, actual hours of work and contributions owed to the Benefit Funds shall be liable to the Benefit Funds and any related organizations, for the contribution amounts determined as provided herein and also for 20% liquidated damages, compound interest at the rate of prime plus 2 points (as determined by the Administrator), auditor's and attorney's fees and any other expenses of collection including investigative costs.

# LABORERS' PENSION AND WELFARE FUNDS

## POLICY FOR SCHEDULING OF AUDITS

As Adopted by The Boards of Trustees
Effective as of April 1, 2006

Contributing employers to the Laborers' Pension Fund and the Health and Welfare Department of Construction and General Laborers' District Council of Chicago and Vicinity (collectively, the "Benefit Funds"), shall be audited periodically in accordance with the procedures adopted by the Collection Committee of the Benefit Funds. The Director of the Field Department, in cooperation with the Benefit Funds' auditors, shall prepare a schedule for auditing contributing employers in accordance with the following procedures.

Two types of audits shall be conducted: "full audits" in which payroll and other records on all employees are examined and "sampling audits" in which a selection of payroll and other records are tested to enable the compliance auditor to make a reasonable determination that there are no delinquencies. A sampling audit should include a review of all types of records (e.g. payroll records, tax records, cash disbursement records, reports to other benefit funds, etc.) Where a sampling audit discloses delinquencies or related record discrepancies, a full audit shall be conducted.

Employers shall be scheduled for either full audits or sampling audits in groups based upon the contribution histories of the employers. Either a sampling or full audit shall be conducted at least once every five (5) years. Any employer that fails to schedule an audit and submit records for review within 45 days from the date of the audit request will be liable for all costs of compelling and enforcing the audit request. The following procedures shall be used:

## AUDIT PERIOD

1. **New Employers.** New employers shall be scheduled for audits within the first year in which contributions to the Benefit Funds are required.

2. **Honor Roll Employers.** Employers with a history of adequate record keeping and timely, payments to the Benefit Funds ("Honor Roll Employers"), shall be required to submit to audits every three (3) to five (5) years. Following an audit showing adequate record keeping and correct payments, such an employer shall be designated an Honor Roll Employer and shall be selected randomly for an audit between the third and fifth year thereafter. (Such employers may opt for a scheduled audit every three years.) An inadvertent shortage of no more than the greater of $1000 or two percent (2%) of required contributions determined on a full audit covering three or more years of contributions to the Benefit Funds shall not disqualify an employer from inclusion in this group.

3. **Other Contributing Employers.** Employers that are not classified as New or Honor Roll Employers or who have been assessed significant delinquencies to the Benefit Funds or any of the ancillary funds to which contributions are owed pursuant to the collective bargaining agreements of the Laborers' District Council shall be scheduled for full audits at least once every three (3) years.

4. **Employers Subject to Special Audits**. At the discretion of the Director of the Field Department full audits of employers obligated to contribute to the Benefit Funds may be conducted at any time based upon information concerning possible delinquencies, e.g., failure to file monthly remittance reports, failure to pay contractually required wage rates, information concerning a possible closing or sale of the business, information that the employer is operating an alter ego or similar bases suggesting possible delinquencies.

## FULL AND SAMPLING AUDITS

1. **New Employers**. If there is a sufficient number of employees of a New Employer, the auditor of the Benefit Funds may do a sampling audit to determine if the employer is maintaining accurate records and making required contributions, otherwise the auditor will do a full audit. An important purpose of audits for new employers is to inform employers of the procedures for contributing to the Benefit Funds and the requisite records to be maintained. *

2. **Honor Roll Employers**. Sampling audits shall be used for Honor Roll Employers if they have sufficient employees to warrant use of sampling methods. If a sampling audit discloses inaccurate or incomplete record keeping or evidence of significant delinquencies, a full audit shall be done.

3. **Other Contributing Employers**. Full audits shall be conducted if employers are not qualified as New or Honor Roll Employers.

4. Notwithstanding the foregoing, the Collection Committee or the Director of the Field Department may, in their discretion, determine that a full audit shall be done of any employer or that, where a sampling audit is to be conducted, specific records shall be produced.*

* For information concerning the requisite records to be maintained, see the Laborers' Pension and Welfare Funds Policy for Retention and Production of Employer Records, effective as of April 1, 2006 and the Records Required to be Retained By Employers and Produced for Audits adopted January 9, 2002.

# RESTATED AGREEMENT AND DECLARATION OF TRUST OF THE HEALTH AND WELFARE DEPARTMENT OF THE CONSTRUCTION AND GENERAL LABORERS' DISTRICT COUNCIL OF CHICAGO AND VICINITY

Restated through
July 1, 2003


EXHIBIT
D-4

## ARTICLE VI
## EMPLOYER CONTRIBUTIONS

Section 1.  IN GENERAL.  In order to fund the Benefits provided for by this Agreement, each Employer, for the period that it is obligated by a Written Agreement, shall make contributions to the Trustees pursuant to regulations established by the Trustees at the times required by that agreement.  The rate of contributions shall be determined by the applicable Collective Bargaining Agreements or Participation Agreements, together with any amendments, supplements or modifications thereto. Notwithstanding the preceding sentence, if an Employer is required to make contributions by reason of a Participation Agreement or other Written Agreement that is not a Collective Bargaining Agreement, the amount of its contributions shall be not less than the amount required by the Collective Bargaining Agreement in effect between the Employer Association and the Union having jurisdiction over the geographic area in which the covered Employees perform their work.  No Employee shall be permitted to contract or otherwise agree with or permit his Employer to provide wage or benefit payments which do not conform with the amount of contributions required under the foregoing provisions of this Section and any such contract or agreement shall be null and void.  It shall not be a defense to any claim by the Trustees or an Employee for payment of delinquent contributions from an Employer that such Employer had entered into an agreement with any Employee purporting to waive the Employee's right to strict compliance with the provisions of the applicable Collective Bargaining Agreement or a Participation Agreement.  All contributions shall be paid in the manner and form required by the Trustees.

Section 2.  DEFAULT IN PAYMENT OF CONTRIBUTIONS.  Nonpayment by an Employer of any contributions when due shall not relieve any other Employer of his obligation to make payments.  The Trustees may take any action necessary to enforce payment of the contributions and penalties due hereunder, including, but not limited to, proceedings at law and in equity.  Any such action shall not prejudice the Union in any action it may wish to take on account of such nonpayment.  The Trustees are authorized to establish a reasonable and lawful grace period by which contributions must be received; Employers making contributions that are not received before the expiration of said period and any Employer making late payments due under an installment agreement shall be assessed liquidated damages of 10% of the amount of the contributions which are owed.  All Employers party to or otherwise bound by this Agreement acknowledge that the liquidated damages will be used to defer administrative costs arising by said delinquency and acknowledge the costs to be actual and substantial though difficult to ascertain; however the Employers acknowledge these costs to be at a minimum of 10% waiving the necessity of any additional proof thereof.  In addition, the delinquent contributions and any payments by the Employer pursuant to an installment agreement, shall bear interest, up to the prime rate plus two points, charged by the Fund's custodian bank (or any other bank selected by the Trustees) or such other lawful amount as determined by the Trustees from the due date until totally satisfied.  The Trustees are hereby given the power and authority, in their discretion, to assess a lesser amount or to waive or suspend payment of liquidated damages, interest, audit fees or investigative costs in accordance with rules and procedures adopted by the Collection Committee of the Board of Trustees and to compromise claims for delinquent contributions and related liabilities and collection costs where appropriate to settle cases favorably for the Welfare

15

Fund.   The Collection Committee may include trustees of the Laborers' Pension Fund as members of such Collection Committee.

In the event an Employer party to this Agreement or otherwise bound thereby becomes delinquent in his contributions or an installment agreement, or fails to post a bond as required, or refuses to provide the records required to be kept by contributing employers or submit to an audit, said delinquent Employer shall be liable for reasonable attorneys' fees and for all reasonable costs incurred in the collection process, including but not limited to, court fees, audit fees and investigative costs.  The term "reasonable attorneys' fees" as used herein shall mean all attorneys' fees in the amounts for which the Trustees become legally obligated for actions seeking delinquent contributions, to compel an audit, or for recovery of liquidated damages, audit costs, filing fees and any other expenses incurred by the Trustees.

The Trustees are hereby given the power and authority in their discretion, to require any Employer to deposit with the Trustees, in advance, as a guarantee for the payment of monthly contributions, an amount equal to three (3) times the monthly contributions of such Employer, as estimated by the Trustees.  At the option of the Trustees the Employer shall furnish the Trustees in lieu of any cash deposit a bond in an amount not less than Five Thousand Dollars ($5,000.00), or in an amount consistent with the terms of the current Collective Bargaining Agreement to which the Employer is subject.   In the event an Employer is repeatedly delinquent in its contribution payments to the Welfare Fund, the Trustees have the power and authority to require that Employer to purchase a bond in excess of $5,000.00 or the amounts set forth in the current Collective Bargaining Agreements in an amount equal to three (3) times the highest monthly contributions of the Employer in the twelve months prior to any delinquency.  The Trustees, in their discretion, may also waive the requirement of a cash deposit or a surety bond in lieu of a personal guaranty when such waiver is warranted.

Section 3.   REPORT ON CONTRIBUTIONS AND PRODUCTION OF RECORDS.
The Employers shall make all reports on contributions required by the Trustees.  Each Employer shall promptly furnish to the Trustees, on demand, the names of its employees, their social security numbers, the hours worked by each employee, and such other information as the Trustees may reasonably require in connection with the administration of the Trust.  The Trustees may at any time have an audit made by an independent accounting firm of the payroll of any Employer in connection with the said contributions and/or reports.  All Employers shall be required to maintain records in compliance with procedures from the beginning of such Employer's participation in the Trust until given written authorization by the Administrator, upon request, to destroy said records.  The Administrator shall require the Employer to designate the classification of all of his employees and if the Employer fails to do so, the Trustees shall conduct an investigation for the purpose of determining the classification of such employees and the results of said investigation shall be conclusive.  Attached hereto as Addendum A are the current collection policies concerning the Scheduling of Audits and Retention and Production of Employer Records adopted by the Trustees.

## ADDENDUM A

## RECORDS REQUIRED TO BE RETAINED BY EMPLOYERS
## AND PRODUCED FOR AUDITS

The following records shall be maintained and retained by all contributing employers to the Benefit Funds for at least six years from the contribution date and shall be produced for inspection and copying by an auditor of the Benefit Funds upon written request:

1.  Quarterly and annual payroll tax returns, including, but not limited to, federal quarterly form 941's, federal annual form W-2's, W-3's, 940's, 1099's and state quarterly unemployment returns (form UC-3).

2.  Payroll journals and/or registers which include or identify employees' social security numbers, hourly rates of pay, hours worked and the time period in which the work was performed.

3.  Individual earnings records for all employees of the employer not shown on payroll journals or registers, including social security number and work classification (or code or clock or ID number), hourly rates of pay, hours worked and the time period in which the work was performed.

4.  Cash disbursement journals and general ledgers.

5.  Copies of all contribution reports and proof of payment (canceled checks or records of canceled checks) of all contributions to the Laborers' Funds and to all other trade union fringe benefit funds to which the employer contributed.

6.  Copies of all dues records and proof of payment (canceled checks or records of canceled checks) of all union dues submitted to the Laborers' District Council.

7.  Records showing all amounts paid to all persons or entities that performed work for the employer as independent contractors or subcontractors, if any, including copies of any federal form 1099's issued by the employer.

8.  Daily time records filed by employees or supervisors.

9.  Source documents and lists of job codes and equipment codes.

10.  Certified payrolls for public sector jobs where such payrolls are required.

11.  Employee personnel files including, but not limited to, last known addresses and telephone numbers, any documents which demonstrate employees' job classifications and/or status as an apprentice, journeyman, foreman, superintendent, or supervisor. (Confidential medical records or other private records not relevant to the establishment of an employee's job classification shall not be disclosed.)

1

12. Bank account statements and canceled checks from any account used in conjunction with the employer's business.

13. If records of all hours worked, rates of pay and classifications are not provided in the records listed in items 1 through 10, the employer shall maintain monthly lists of all employees not shown on payroll records, showing Social Security number and work classification (or code or clock or ID number), rates of pay and hours worked.

Honor Roll Employers shall be required only to produce basic records needed by the Benefit Funds' auditors to do an audit, specifically items 1 through 7 above. However, if an initial examination of such limited records discloses significant record keeping errors or failures to contribute, the auditor may request additional records listed above. In the absence of evidence of a deliberate failure by an Honor Roll Employer to contribute on behalf of a bargaining unit employee, the rebuttable presumptions provided for in the attached Policy for Retention and Production of Employer Records shall not apply to such Honor Roll Employer.

Notwithstanding the foregoing, the Collection Committee or the Director of the Field Department may, in their discretion, determine that a full audit shall be done of any employer or that, where a sampling audit is to be conducted, specific records shall be produced. The judgment of the trustees in interpreting and applying this policy shall be conclusive and binding on all parties.

Adopted January 9, 2002

# LABORERS' PENSION AND WELFARE FUNDS

## POLICY FOR RETENTION AND PRODUCTION OF EMPLOYER RECORDS

As Adopted by the Boards of Trustees
Effective as of April 1, 2006

WHEREAS, Section 209 of the Employee Retirement Income Security Act of 1974 , as amended ("ERISA"), 29 U.S.C. Section1059, requires employers obligated to contribute to employee benefit funds to maintain records with respect to its employees which are sufficient to determine benefits due to such employees of which may become due to them; and

WHEREAS, the Trustees of the Laborers' Pension Fund and the Trustees of the Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity (collectively, the "Benefit Funds") have the authority under their respective Trust Agreements to establish rules, regulations and policies regarding records which must be maintained by employers in order to administer the Benefit Funds; and

WHEREAS, the Trustees of the Benefit Funds have found that most contributing employers maintain proper records and make all required contributions to the Benefit Funds, nevertheless, there are employers who are bound by the Trust Agreements of the Benefit Funds who fail to maintain records which are adequate for the Funds to determine whether proper contributions have been made on behalf of eligible employees and that some of such employers do so deliberately in order to avoid their obligations to make such payments; and

WHEREAS, the practices of employers who fail to maintain records sufficient to enable the Benefit Funds to conduct thorough payroll audits cause their employees to lose valuable pension and welfare benefits and cause the Benefit Funds to lose contractually required contributions and investment earnings on those contributions; and

WHEREAS, the practices of employers who fail to maintain adequate records cause the Benefit Funds to incur substantial additional administrative and legal expenses in order to determine proper amounts owed to the Funds by such employers; and

WHEREAS, enforcement of a policy specifying the records required to be maintained and produced increases the ability of the Funds to prove the contributions owed by delinquent employers and thereby to provide proper credit to the employees and their beneficiaries;

NOW THEREFORE, the Trustees resolve that the following policies are adopted by the Benefit Funds effective as of March 1, 2002:

1. Except as otherwise provided herein, all contributing employers to the Benefit Funds shall maintain and make available for inspection and copying by an auditor of the Benefit Funds the records listed on Appendix A, attached hereto.

2. Any employer obligated to contribute to the Benefit Funds who fails to maintain and make available for inspection and copying to an auditor of the Benefit Funds the requisite records listed on Appendix A shall bear the burden of proof with respect to the exclusion of any employee from coverage by the collective bargaining agreement with the Union. In those cases where an employer asserts that an employee is excluded because he/she is a member of another bargaining unit, the employer must submit tangible evidence of that fact, e.g., a union membership card, contribution records maintained for the benefit funds of the other bargaining unit, commercial drivers' license if it is asserted that an employee is a truck driver rather than a laborer and workers' compensation policies, forms and applications listing an employee's job classification or other business records. The affidavit of an employer's representative or officer unsupported by documentary evidence shall not be sufficient to meet the employer's burden of proof. Affidavits solicited and obtained ex parte by an employer's representative from employees, for which there is no corroborative evidence in the form of records maintained in the ordinary course of business, shall not be sufficient to meet the employer's burden of proof.

3. When an employer has failed to maintain or make available the requisite records, there shall be a rebuttable presumption that any employee listed as a possible laborer by an auditor, Field Representative or attorney representing the Benefit Funds was a laborer. There shall also be rebuttable presumptions concerning the hourly rate and number of hours worked as follows: (a) that the employee was paid only $10.00 per hour if no record of wage rates was made by the employer, and/or (b) that the employee worked 72 hours per week if no record of the number of hours was maintained; whichever of these presumptions results in the higher amount of contributions shall be applied. When evidence exists that a different hourly rate was paid to employees of an employer that failed to maintain the required records, at the discretion of the Director of the Field Department, a different hourly rate may be presumed for purposes of determining the amount of contributions owed by the employer. If that evidence shows that the employer paid a rate lower than $10.00 per hour to any employees doing bargaining unit work, then that lower rate shall be presumed to be the actual rate paid to all employees for whom adequate records were not kept. Similarly, where evidence exists of a different number of hours worked, the Director may apply a different number of hours for determining the contributions owed, and this number of hours worked shall be presumed correct. All wages computed as provided in this paragraph shall be presumed to be paid as straight time wages regardless of the number of hours worked unless the employer has provided documentation, in the form required by the terms of this policy, showing that it followed the requirements of the Fair Labor Standards Act and/or the applicable collective bargaining agreement as to the payment of overtime.

4. An employer that fails to maintain the requisite records and fails to cooperate with the Trustees in establishing the paid wage rates, actual hours of work and contributions owed to the Benefit Funds shall be liable to the Benefit Funds and any related organizations, for the contribution amounts determined as provided herein and also for 20% liquidated damages, compound interest at the rate of prime plus 2 points (as determined by the Administrator), auditor's and attorney's fees and any other expenses of collection including investigative costs.

# LABORERS' PENSION AND WELFARE FUNDS

## POLICY FOR SCHEDULING OF AUDITS

As Adopted by The Boards of Trustees
Effective as of April 1, 2006

Contributing employers to the Laborers' Pension Fund and the Health and Welfare Department of Construction and General Laborers' District Council of Chicago and Vicinity (collectively, the "Benefit Funds"), shall be audited periodically in accordance with the procedures adopted by the Collection Committee of the Benefit Funds. The Director of the Field Department, in cooperation with the Benefit Funds' auditors, shall prepare a schedule for auditing contributing employers in accordance with the following procedures.

Two types of audits shall be conducted: "full audits" in which payroll and other records on all employees are examined and "sampling audits" in which a selection of payroll and other records are tested to enable the compliance auditor to make a reasonable determination that there are no delinquencies. A sampling audit should include a review of all types of records (e.g. payroll records, tax records, cash disbursement records, reports to other benefit funds, etc.) Where a sampling audit discloses delinquencies or related record discrepancies, a full audit shall be conducted.

Employers shall be scheduled for either full audits or sampling audits in groups based upon the contribution histories of the employers. Either a sampling or full audit shall be conducted at least once every five (5) years. Any employer that fails to schedule an audit and submit records for review within 45 days from the date of the audit request will be liable for all costs of compelling and enforcing the audit request. The following procedures shall be used:

## AUDIT PERIOD

1. **New Employers**. New employers shall be scheduled for audits within the first year in which contributions to the Benefit Funds are required.

2. **Honor Roll Employers.** Employers with a history of adequate record keeping and timely, payments to the Benefit Funds ("Honor Roll Employers"), shall be required to submit to audits every three (3) to five (5) years. Following an audit showing adequate record keeping and correct payments, such an employer shall be designated an Honor Roll Employer and shall be selected randomly for an audit between the third and fifth year thereafter. (Such employers may opt for a scheduled audit every three years.) An inadvertent shortage of no more than the greater of $1000 or two percent (2%) of required contributions determined on a full audit covering three or more years of contributions to the Benefit Funds shall not disqualify an employer from inclusion in this group.

3. **Other Contributing Employers**. Employers that are not classified as New or Honor Roll Employers or who have been assessed significant delinquencies to the Benefit Funds or any of the ancillary funds to which contributions are owed pursuant to the collective bargaining agreements of the Laborers' District Council shall be scheduled for full audits at least once every three (3) years.

4. **Employers Subject to Special Audits**. At the discretion of the Director of the Field Department full audits of employers obligated to contribute to the Benefit Funds may be conducted at any time based upon information concerning possible delinquencies, e.g., failure to file monthly remittance reports, failure to pay contractually required wage rates, information concerning a possible closing or sale of the business, information that the employer is operating an alter ego or similar bases suggesting possible delinquencies.

## FULL AND SAMPLING AUDITS

1. **New Employers**. If there is a sufficient number of employees of a New Employer, the auditor of the Benefit Funds may do a sampling audit to determine if the employer is maintaining accurate records and making required contributions, otherwise the auditor will do a full audit. An important purpose of audits for new employers is to inform employers of the procedures for contributing to the Benefit Funds and the requisite records to be maintained. *

2. **Honor Roll Employers**. Sampling audits shall be used for Honor Roll Employers if they have sufficient employees to warrant use of sampling methods. If a sampling audit discloses inaccurate or incomplete record keeping or evidence of significant delinquencies, a full audit shall be done.

3. **Other Contributing Employers**. Full audits shall be conducted if employers are not qualified as New or Honor Roll Employers.

4. Notwithstanding the foregoing, the Collection Committee or the Director of the Field Department may, in their discretion, determine that a full audit shall be done of any employer or that, where a sampling audit is to be conducted, specific records shall be produced.*

* For information concerning the requisite records to be maintained, see the Laborers' Pension and Welfare Funds Policy for Retention and Production of Employer Records, effective as of April 1, 2006 and the Records Required to be Retained By Employers and Produced for Audits adopted January 9, 2002.

2

# 1ST AUDIT
# LABORERS' PENSION & WELFARE FUNDS

1/28/2008

AUDIT

EMPLOYER: THE ROMAN GROUP   CODE 34565

FOLLOWING ARE THE FIGURES OWED BY THE ABOVE MENTIONED CONTRACTOR AS A RESULT OF THE AUDIT.

| | HOURS | WELFARE | RATE | PENSION | RATE | TRAINING FUND | RATE | DUES | LDCLMCC | RATE | IAF | RATE | LECET | RATE | CISCO | RATE | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 6-20-06 - 12-31-06 ADDITIONAL HOURS | 280.00 | 2,088.80 | 7.46 | 1,355.20 | 4.84 | 47.60 | 0.17 | 134.75 | 33.60 | 0.12 | 22.40 | 0.08 | 14.00 | 0.05 | 2.80 | 0.01 | 3,699.15 |
| FRIENDSHIP JANITORIAL 6-20-06 - 5-31-07 | 2,261.00 | 16,867.06 | 7.46 | 10,943.24 | 4.84 | 384.37 | 0.17 | 1,248.37 | 271.32 | 0.12 | 180.88 | 0.08 | 113.05 | 0.05 | 22.61 | 0.01 | 30,030.90 |
| MEN (NOT REPORTED) FRIENDSHIP JANITORIAL 6-20-06 - 5-31-07 | 3,228.00 | 24,080.88 | 7.46 | 15,623.52 | 4.84 | 548.76 | 0.17 | 1,782.26 | 387.36 | 0.12 | 258.24 | 0.08 | 161.40 | 0.05 | 32.28 | 0.01 | 42,874.70 |
| SUBTOTAL | 5,769.00 | 43,036.74 | | 27,921.96 | | 980.73 | | 3,165.38 | 692.28 | | 461.52 | | 288.45 | | 57.69 | | 76,604.75 |
| 10% PENALTIES | | 4,303.67 | | 2,792.20 | | 98.07 | | 316.54 | 69.23 | | 46.15 | | 28.85 | | 5.77 | | 7,660.48 |
| AUDIT COSTS - 1ST AUDIT | | 300.00 | | 300.00 | | | | | | | | | | | | | 600.00 |
| AUDIT COSTS - 2ND AUDIT | | 127.00 | | 128.00 | | | | | | | | | | | | | 255.00 |
| ATTORNEY FEES | | - | | | | | | | | | | | | | | | |
| ACCUM. 10% PENALTIES | | 4,590.78 | | 2,978.28 | | 104.66 | | 3,481.92 | 73.81 | | 49.24 | | 30.76 | | 6.15 | | 7,833.68 |
| ACCUM. INTEREST | | - | | - | | - | | - | | | | | | | | | |
| TOTAL DUE | | 52,358.19 | | 34,120.44 | | 1,183.46 | | | 835.32 | | 556.91 | | 348.06 | | 69.61 | | 92,953.91 |


EXHIBIT D-5

# RICHARD J. WOLF AND COMPANY, INC.

Post Office Box 591
Palos Park, Illinois 60464
(708) 923-0909
Fax (708) 923-0910

February 28, 2007

Board of Trustees of the Various
Fringe Benefit Funds of the
Laborers Pension & Welfare Funds

RE:   The Roman Group (34565)

We have performed a fringe benefit contribution compliance audit of
The Roman Group, for the period from June 28, 2006 through December 31, 2006.
The audit encompassed the comparison of individual earnings records to certain
payroll tax and fund reports and a review of the general disbursement records.

The comparison and review indicate that the employer has not complied with its
fringe benefit contribution requirements and owes the following amounts:

| FUND | AMOUNT |
|------|--------|
| WELFARE | $43,036.74 |
| PENSION | 27,921.96 |
| TRAINING | 980.73 |
| LECET | 288.45 |
| CISCO | 57.69 |
| IAF | 461.52 |
| LMCC | 692.28 |
| DUES | 3,165.38 |
| TOTAL | $76,604.75 |

Plus previous late charges assessed by Laborer's Pension & Welfare Funds    2,519.67
Plus previous penalties incurred to Laborers' District Council Funds    .$    75.91

TOTAL    $79,200.33

In addition, the employer could not provide proof of a current wage and fringe
benefit bond.

RICHARD J. WOLF AND COMPANY, INC.

2/27/2007

# LABORERS' DISTRICT COUNCIL OF CHICAGO - CAICA ASSOCIATION

## THE ROMAN GROUP #34565

### ADDITIONAL HOURS and/or WORK DUES  6/06 - 5/07

**JUN 06 to MAY 07**

| S.S.# | Flags | Type | 2006 | | | | | | 2007 | | | | | Total |
| | | | Jun | Jul | Aug | Sep | Oct | Nov | Dec | Jan | Feb | Mar | Apr | May | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| ZERVOS, BASIL | # | Hours | - | - | - | - | - | 160.00 | 120.00 | - | | | | | 280.00 |
| | | Gross $ | - | - | - | - | - | 4,400.00 | 3,300.00 | - | | | | | $7,700.00 |

| | Jun | Jul | Aug | Sep | Oct | Nov | Dec | Jan | Feb | Mar | Apr | May | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| TOTAL HOURS | $ - | $ - | $ - | $ - | $ - | 160.00 | 120.00 | $ - | | | | | 280.00 |
| TOTAL GROSS $ | $ - | $ - | $ - | $ - | $ - | $4,400.00 | $3,300.00 | $ - | | | | | $7,700.00 |

**Amount Due To Funds:**

| | Jun | Jul | Aug | Sep | Oct | Nov | Dec | Jan | Feb | Mar | Apr | May | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| WELFARE | $ | $ | $ | $ | $ | 1,193.60 | 895.20 | $ | $ | $ | $ | $ | $2,088.80 |
| PENSION | $ | $ | $ | $ | $ | 774.40 | 580.80 | $ | $ | $ | $ | $ | 1,355.20 |
| TRAINING | $ | $ | $ | $ | $ | 27.20 | 20.40 | $ | $ | $ | $ | $ | 47.60 |
| LECET | $ | $ | $ | $ | $ | 8.00 | 6.00 | $ | $ | $ | $ | $ | 14.00 |
| CISCO | $ | $ | $ | $ | $ | 1.60 | 1.20 | $ | $ | $ | $ | $ | 2.80 |
| IAF | $ | $ | $ | $ | $ | 12.80 | 9.60 | $ | $ | $ | $ | $ | 22.40 |
| LMCC | $ | $ | $ | $ | $ | 19.20 | 14.40 | $ | $ | $ | $ | $ | 33.60 |
| DUES | $ | $ | $ | $ | $ | 77.00 | 57.75 | $ | $ | $ | $ | $ | 134.75 |
| TOTAL | $ | $ | $ | $ | $ | $2,113.80 | $1,585.35 | $ | $ | $ | $ | $ | $3,698.15 |

| Rates: | 6/1/06 | to | 5/5/07 |
|---|---|---|---|
| WELFARE | 7.46 | CISCO | 0.01 |
| PENSION | 4.84 | IAF | 0.08 |
| TRAINING | 0.17 | LMCC | 0.12 |
| LECET | 0.05 | DUES | 1.75% |

**LABORERS' DISTRICT COUNCIL OF CHICAGO - CAICA ASSOCIATION**

**FRIENDSHIP JANITORIAL SERVICES, INC. #34665**

ADDITIONAL HOURS and/or WORK DUES  6/06 - 5/07

JUN 06 to MAY 07

| S.S.# | Flags # | Type | 2006 Jun | Jul | Aug | Sep | Oct | Nov | Dec | 2007 Jan | Feb | Mar | Apr | May | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| BARRERA, BAGINO | # | Hours | | | | | | 32.00 | 16.00 | | | | | | 48.00 |
| | | Gross $ | | | | | | 1,009.60 | 504.80 | | | | | | $ 1,514.40 |
| BOROVICKOVA, HANA | # | Hours | 36.00 | 200.00 | 199.00 | 17.00 | 192.00 | 250.00 | 71.00 | | | | | | 965.00 |
| | | Gross $ | 1,135.80 | 6,310.00 | 6,278.45 | 536.35 | 6,057.60 | 7,887.50 | 2,240.05 | | | | | | $30,445.75 |
| CASTRO, ELIA | # | Hours | | | | | | 25.00 | | | | | | | 25.00 |
| | | Gross $ | | | | | | 788.75 | | | | | | | $ 788.75 |
| LANDOJTOWICZ, SEBASTIAN | # | Hours | 55.00 | 37.00 | 48.00 | | 61.00 | 38.00 | | | | | | | 238.00 |
| | | Gross $ | 1,735.25 | 1,167.35 | 1,514.40 | | 1,924.55 | 1,198.90 | | | | | | | $ 7,540.45 |
| LISOWSKA, MARTA | # | Hours | | | | | | | 126.00 | | | | | | 128.00 |
| | | Gross $ | | | | | | | 4,099.85 | | | | | | $ 4,099.85 |
| NUKIC, ALMA | # | Hours | | 132.00 | 32.00 | | 85.00 | | 50.00 | | | | | | 299.00 |
| | | Gross $ | | 4,164.80 | 1,009.60 | | 2,681.75 | | 1,577.50 | | | | | | $ 9,435.45 |
| RIVERA, JORGE | # | Hours | | | | | | 18.00 | 47.00 | | | | | | 66.00 |
| | | Gross $ | | | | | | 599.45 | 1,452.85 | | | | | | $ 2,082.30 |
| ZERVOS, BASIL | # | Hours | | 110.00 | 200.00 | | 80.00 | 100.00 | | | | | | | 490.00 |
| | | Gross $ | | 3,470.50 | 6,310.00 | | 2,524.00 | 3,165.00 | | | | | | | $15,456.50 |

| | Jun | Jul | Aug | Sep | Oct | Nov | Dec | Jan | Feb | Mar | Apr | May | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| TOTAL HOURS | 91.00 | 479.00 | 479.00 | 17.00 | 418.00 | 464.00 | 313.00 | | | | | | 2,261.00 |
| TOTAL GROSS $ | $2,871.05 | $15,112.45 | $15,112.45 | $536.35 | $13,187.90 | $14,639.20 | $9,876.16 | $ | $ | $ | $ | $ | $71,334.66 |

**Amount Due To Funds:**

| | Jun | Jul | Aug | Sep | Oct | Nov | Dec | Jan | Feb | Mar | Apr | May | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| WELFARE | $ 678.86 | $ 3,673.34 | | | | | | | | | | | $16,897.06 |
| PENSION | 440.44 | 2,318.36 | | | | | | | | | | | 10,943.24 |
| TRAINING | 15.47 | 81.43 | | | | | | | | | | | 384.37 |
| LECET | 4.55 | 23.95 | | | | | | | | | | | 113.05 |
| CISCO | 0.91 | 4.79 | | | | | | | | | | | 22.61 |
| IAF | 7.28 | 38.32 | | | | | | | | | | | 180.88 |
| LMCC | 10.92 | 57.48 | | | | | | | | | | | 271.32 |
| DUES | 50.24 | 284.47 | | | | | | | | | | | 1,249.37 |
| TOTAL | $1,208.67 | $6,362.14 | $ | $ | $ | $ | $ | $ | $ | $ | $ | $ | $30,030.90 |

Rates:  6/1/06  to  5/31/07

| | | | |
|---|---|---|---|
| WELFARE | 7.46 | CISCO | 0.01 |
| PENSION | 4.84 | IAF | 0.08 |
| TRAINING | 0.17 | LMCC | 0.12 |
| LECET | 0.05 | DUES | 1.75% |

Page 2 of 5

JUN 06 to MAY 07

**LABORERS' DISTRICT COUNCIL OF CHICAGO - CAICA ASSOCIATION**

**FRIENDSHIP JANITORIAL SERVICES, INC. #34666**

*UNREPORTED HOURS and/or WORK DUES  6/06 - 5/07*

| S.S. # | Flags | Type | 2006 Jun | Jul | Aug | Sep | Oct | Nov | Dec | 2007 Jan | Feb | Mar | Apr | May | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| BROWN, KATIE | 31.55 | Hours | | 26.00 | | | | | | | | | | | 28.00 |
| | 31.55 | Gross $ | | 820.30 | | | | | | | | | | | $ 820.30 |
| CAL, JANINA | 31.55 | Hours | | 185.00 | 122.00 | 82.00 | 145.00 | 200.00 | 179.00 | | | | | | 913.00 |
| | 31.55 | Gross $ | | 5,836.75 | 3,849.10 | 2,587.10 | 4,574.75 | 6,310.00 | 5,647.45 | | | | | | $ 28,805.15 |
| DOMAGALA, DOROTA | 31.55 | Hours | 75.00 | 36.00 | | 17.00 | 200.00 | | | | | | | | 328.00 |
| | 31.55 | Gross $ | 2,368.25 | 1,135.80 | | 638.35 | 6,310.00 | | | | | | | | $ 10,348.40 |
| GINTFR, MICHAEL | 31.55 | Hours | | 74.00 | 125.00 | 54.00 | 140.00 | 60.00 | 200.00 | | | | | | 653.00 |
| | 31.55 | Gross $ | | 2,334.70 | 3,943.76 | 1,703.70 | 4,417.00 | 1,893.00 | 6,310.00 | | | | | | $ 20,602.15 |
| HUERTA, JUAN | 31.55 | Hours | | | | | | | 31.00 | | | | | | 31.00 |
| | 31.55 | Gross $ | | | | | | | 978.05 | | | | | | $ 978.05 |
| KONSOK, MONIKA | 31.55 | Hours | | | | | 200.00 | | | | | | | | 200.00 |
| | 31.55 | Gross $ | | | | | 6,310.00 | | | | | | | | $ 6,310.00 |
| KUDLACZ, DARIUSZ | 31.55 | Hours | | 100.00 | | | | | | | | | | | 100.00 |
| | 31.55 | Gross $ | | 3,155.00 | | | | | | | | | | | $ 3,155.00 |
| LAKOMY, WACLAW | 31.55 | Hours | | 100.00 | | | | | | | | | | | 100.00 |
| | 31.55 | Gross $ | | 3,155.00 | | | | | | | | | | | $ 3,155.00 |
| LANDOJTOWICZ, DAMIEN | 31.55 | Hours | | 26.00 | | | | | | | | | | | 26.00 |
| | 31.55 | Gross $ | | 820.30 | | | | | | | | | | | $ 820.30 |
| LANDOJTOWICZ, KRYSTYNA | 31.55 | Hours | 55.00 | 52.00 | 55.00 | 98.00 | | 80.00 | | | | | | | 340.00 |
| | 31.55 | Gross $ | 1,735.25 | 1,640.80 | 1,735.25 | 3,091.90 | | 2,524.00 | | | | | | | $ 10,727.00 |
| LYSEK, ANNA | 31.55 | Hours | | 36.00 | | | | | | | | | | | 36.00 |
| | 31.55 | Gross $ | | 1,135.80 | | | | | | | | | | | $ 1,135.80 |
| MALGORZATA, NOWAK | 31.55 | Hours | | 74.00 | 83.00 | 8.00 | 29.00 | 62.00 | | | | | | | 256.00 |
| | 31.55 | Gross $ | | 2,334.70 | 2,618.65 | 252.40 | 914.95 | 1,956.10 | | | | | | | $ 8,076.80 |
| NOWOSIELECKI, MARIUSZ | 31.55 | Hours | | 36.00 | | | | | | | | | | | 36.00 |
| | 31.55 | Gross $ | | 1,135.80 | | | | | | | | | | | $ 1,135.80 |
| POCZATEK, ANNA | 31.55 | Hours | | 36.00 | | | | | | | | | | | 36.00 |
| | 31.55 | Gross $ | | 1,135.80 | | | | | | | | | | | $ 1,135.80 |
| SMIETANA, AGNIESZKA e | 31.55 | Hours | | 36.00 | | | | | | | | | | | 38.00 |
| | 31.55 | Gross $ | | 1,135.80 | | | | | | | | | | | $ 1,136.80 |

2/27/2007

## LABORERS' DISTRICT COUNCIL OF CHICAGO - CAICA ASSOCIATION

### FRIENDSHIP JANITORIAL SERVICES, INC.  #34566

**UNREPORTED HOURS and/or WORK DUES  6/06 - 5/07**

JUN 06 to MAY 07

| S.S. # | Flags | Type | 2008 Jun | Jul | Aug | Sep | Oct | Nov | Dec | 2007 Jan | Feb | Mar | Apr | May | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| ISTANCZAK, EWA | 31.55 | Hours | | 75.00 | | | | | | | | | | | 75.00 |
| | | Gross $ | | 2,366.25 | | | | | | | | | | | $ 2,366.25 |
| ZAWISZA, MONIKA | 31.55 | Hours | | 36.00 | | | | | | | | | | | 36.00 |
| | | Gross $ | | 1,135.80 | | | | | | | | | | | $ 1,135.80 |

| | Jun | Jul | Aug | Sep | Oct | Nov | Dec | Total |
|---|---|---|---|---|---|---|---|---|
| TOTAL HOURS | 130.00 | 928.00 | 385.00 | 161.00 | 812.00 | 402.00 | 410.00 | 3,228.00 |
| TOTAL GROSS $ | $ 4,101.50 | $ 29,278.40 | $ 12,146.75 | $ 5,079.55 | $ 25,618.60 | $ 12,683.10 | $ 12,936.60 | $ 101,843.40 |

**Amount Due To Funds:**

| | Jun | Jul | Aug | Sep | Oct | Nov | Dec | Jan | Feb | Mar | Apr | May | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| WELFARE | $ 969.80 | $ 6,922.88 | $ 2,872.10 | $ 1,201.08 | $ 6,057.52 | $ 2,998.92 | $ 3,056.60 | $ - | $ - | $ - | $ - | $ - | $ 24,090.88 |
| PENSION | 629.20 | 4,491.52 | 1,863.40 | 779.24 | 3,930.08 | 1,945.88 | 1,984.40 | - | - | - | - | - | 15,623.82 |
| TRAINING | 22.10 | 157.76 | 86.46 | 27.37 | 138.04 | 68.34 | 69.70 | - | - | - | - | - | 548.76 |
| LECET | 6.50 | 46.40 | 19.25 | 8.05 | 40.60 | 20.10 | 20.50 | - | - | - | - | - | 161.40 |
| CISCO | 1.30 | 9.28 | 3.85 | 1.61 | 8.12 | 4.02 | 4.10 | - | - | - | - | - | 32.28 |
| IAF | 10.40 | 74.24 | 30.80 | 12.88 | 64.96 | 32.16 | 32.80 | - | - | - | - | - | 258.24 |
| LMCC | 15.60 | 111.36 | 46.20 | 19.32 | 97.44 | 48.24 | 49.20 | - | - | - | - | - | 387.36 |
| DUES | 71.78 | 512.37 | 212.57 | 86.89 | 448.33 | 221.95 | 226.37 | - | - | - | - | - | 1,782.26 |
| TOTAL | $ 1,726.68 | $ 12,325.81 | $ 5,113.82 | $ 2,138.42 | $ 10,786.09 | $ 5,339.41 | $ 5,445.67 | $ - | $ - | $ - | $ - | $ - | $ 42,874.70 |

| Rates: | 6/1/05 | to | 5/31/07 | |
|---|---|---|---|---|
| WELFARE | 7.46 | CISCO | 0.01 |
| PENSION | 4.84 | IAF | 0.08 |
| TRAINING | 0.17 | LMCC | 0.12 |
| LECET | 0.05 | DUES | 1.75% |

2/27/2007

# LABORERS' DISTRICT COUNCIL OF CHICAGO - CAICA ASSOCIATION

FRIENDSHIP JANITORIAL SERVICES, INC.   #34565

RICHARD J. WOLF AND COMPANY, INC.

## SUMMARY REPORT TOTAL

|          | ADDITIONAL     | UNREPORTED     | TOTAL          |
|----------|----------------|----------------|----------------|
| WELFARE  | $  16,867.06   | $  24,080.88   | $  40,947.94   |
| PENSION  | $  10,943.24   | $  15,623.52   | $  26,566.76   |
| TRAINING | $     384.37   | $     548.76   | $     933.13   |
| LECET    | $     113.05   | $     161.40   | $     274.45   |
| CISCO    | $      22.61   | $      32.28   | $      54.89   |
| IAF      | $     180.88   | $     258.24   | $     439.12   |
| LMCC     | $     271.32   | $     387.36   | $     658.68   |
| DUES     | $   1,248.37   | $   1,782.26   | $   3,030.63   |
| TOTAL    | $  30,030.90   | $  42,874.70   | $  72,905.60   |

2/27/2007

# LABORERS' DISTRICT COUNCIL OF CHICAGO - CAICA ASSOCIATION

## FRIENDSHIP JANITORIAL SERVICES, INC.   #34565

### RICHARD J. WOLF AND COMPANY, INC.

## ** TOTAL **

| | |
|---|---|
| WELFARE | $ 40,947.94 |
| PENSION | $ 26,566.76 |
| TRAINING | $ 933.13 |
| LECET | $ 274.45 |
| CISCO | $ 54.89 |
| IAF | $ 439.12 |
| LMCC | $ 658.68 |
| DUES | $ 3,030.63 |
| TOTAL | $ 72,905.60 |

# LABORERS' DISTRICT COUNCIL OF CHICAGO - CAICA ASSOCIATION

THE ROMAN GROUP and FRIENDSHIP JANITORIAL SERVICES, INC. #34565

## SUMMARY REPORT TOTAL

RICHARD J. WOLF AND COMPANY, INC.

|  | THE ROMAN GROUP | FRIENDSHIP JANITORIAL | TOTAL |
|---|---|---|---|
| WELFARE | $ 2,088.80 | $ 40,947.94 | $ 43,036.74 |
| PENSION | $ 1,355.20 | $ 26,566.76 | $ 27,921.96 |
| TRAINING | $ 47.60 | $ 933.13 | $ 980.73 |
| LECET | $ 14.00 | $ 274.45 | $ 288.45 |
| CISCO | $ 2.80 | $ 54.89 | $ 57.69 |
| IAF | $ 22.40 | $ 439.12 | $ 461.52 |
| LMCC | $ 33.60 | $ 658.68 | $ 692.28 |
| DUES | $ 134.75 | $ 3,030.63 | $ 3,165.38 |
| TOTAL | $ 3,699.15 | $ 72,905.60 | $ 76,604.75 |
| HOURS | 280.00 | 5,489.00 | 5,769.00 |
| GROSS $ | $ 7,700.00 | $ 173,177.95 | $ 180,877.95 |

2/27/2007

LABORERS' DISTRICT COUNCIL OF CHICAGO - CAICA ASSOCIATION

THE ROMAN GROUP and FRIENDSHIP JANITORIAL SERVICES, INC.   #34565

RICHARD J. WOLF AND COMPANY, INC.

## SUMMARY REPORT TOTAL

|  | THE ROMAN GROUP | FRIENDSHIP JANITORIAL | TOTAL |
|---|---|---|---|
| WELFARE | $ 2,088.80 | $ 40,947.94 | $ 43,036.74 |
| PENSION | $ 1,355.20 | $ 26,566.76 | $ 27,921.96 |
| TRAINING | $ 47.60 | $ 933.13 | $ 980.73 |
| LECET | $ 14.00 | $ 274.45 | $ 288.45 |
| CISCO | $ 2.80 | $ 54.89 | $ 57.69 |
| IAF | $ 22.40 | $ 439.12 | $ 461.52 |
| LMCC | $ 33.60 | $ 658.68 | $ 692.28 |
| DUES | $ 134.75 | $ 3,030.63 | $ 3,165.38 |
| TOTAL | $ 3,699.15 | $ 72,905.60 | $ 76,604.75 |

2/27/2007

LABORERS' DISTRICT COUNCIL OF CHICAGO - CAICA ASSOCIATION

THE ROMAN GROUP and FRIENDSHIP JANITORIAL SERVICES, INC.  #34565

RICHARD J. WOLF AND COMPANY, INC.

** GRAND TOTAL **

| | | |
|---|---|---:|
| WELFARE | $ | 43,036.74 |
| PENSION | $ | 27,921.96 |
| TRAINING | $ | 980.73 |
| LECET | $ | 288.45 |
| CISCO | $ | 57.69 |
| IAF | $ | 461.52 |
| LMCC | $ | 692.28 |
| DUES | $ | 3,165.38 |
| TOTAL | $ | 76,604.75 |

2/27/2007

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| LABORERS' PENSION FUND, et al., | ) | |
| Plaintiffs, | ) | Case No. 07 C 7097 |
| v. | ) | |
| | ) | Judge Manning |
| THE ROMAN GROUP, INC., an Illinois | ) | |
| corporation, FRIENDSHIP JANITORIAL | ) | |
| SERVICES, INC., an Illinois corporation, and | ) | |
| RANDALL L. GIRTON, individually, | ) | |
| Defendants, | ) | |

### DECLARATION OF PATRICK T. WALLACE

I, PATRICK T. WALLACE, declare and state as follows:

1.      I am Funds Counsel for Plaintiffs Laborers' Pension Fund and Laborers' Welfare Fund of the Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity (the "Laborers' Funds"), Plaintiffs in the above-referenced action.  This Declaration is submitted in support of the Laborers' Funds' Motion for Entry of Default Judgment in Sum Certain and to Compel an Audit.

2.      Shareholders of the law firms of Allison, Slutsky & Kennedy, and the Law Offices of Marc Pekay, out-of-house collection counsel for the Laborers' Funds, bill the Laborers' Funds at a rate of $175.00 per hour for shareholders, $150.00 per hour for associates, and $75.00 per hour for paralegals.  Affiant, as in-house counsel for the Laborers' Funds, has first-hand knowledge that the foregoing hourly rates have been found reasonable and have been awarded by many courts in collection proceedings.

3.      I received a Bachelor of Arts Degree from the University of Illinois at Urbana-



Champaign in 1992 and a Juris Doctor Degree from the University of DePaul College of Law in 1995. I was admitted to the bar of the State of Illinois in November 1995 and to the bar of the United States District Court for the Northern District of Illinois in December 1995. I have also been admitted to the bar of the United States District Court for the Central District of Illinois. I was admitted to the Trial Bar of the Northern District of Illinois on September 20, 2000. From November 1995 to August 2000 I practiced labor and employment law as an associate at the law firm of Katz, Friedman, Eagle, Eisenstein & Johnson (formerly Katz, Friedman, Schur & Eagle). In September 2000, I became Funds Counsel for the Laborers' Pension Fund and Laborers' Welfare Fund for the Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity.

3.     Jerrod Olszewski, in-house counsel for the Laborers' Funds, received a Bachelor of Arts Degree from Benedictine University in 1993 and a Juris Doctor Degree from the John Marshall Law School in 2002. He was admitted to the bar of the State of Illinois in May, 2002, and to the bar of the United States District Court for the Northern District of Illinois in May, 2002. From May, 2002 to December, 2004, he practiced labor and employment law as an associate at the law firm of Katz, Friedman, Eagle, Eisenstein & Johnson, former out-of-house counsel to the Laborers' Funds, with the majority of his work being spent representing the Laborers' Funds. In December 2004, he became in-house counsel for the Laborers' Funds.

5.     Based on the foregoing, $175.00 represents a fair and reasonable market rate for my and Jerrod Olszewski's in-house legal services to the Funds in this matter.

6.     Christina Krivanek, in-house counsel for the Laborers' Funds, received a Bachelor of Arts Degree from The Ohio State University in 2002 and a Juris Doctor Degree from the

DePaul University College of Law in 2005. She was admitted to the bar of the state of Illinois in November 2005 and to the bar of the United States District Court for the Northern District of Illinois in January 2006. In January 2006, she became in-house counsel for the Laborers' Funds.

7.    Based on the foregoing, $175.00 represents a fair and reasonable market rate for Christina Krivanek's in-house legal services to the Funds in this matter.

8.    Amy N. Carollo, in-house counsel for the Laborers' Funds, received a Bachelor of Arts Degree from Illinois State University in 2000, Masters of Science from University of Illinois at Chicago in 2002 and a Juris Doctor from Chicago-Kent College of Law in 2005. She was admitted to the bar of the State of Illinois in November of 2005 and to the bar of the United States District Court for the Northern District in January 2006. In March 2006, she became in-house counsel for the Laborers' Funds.

9.    Based on the foregoing, $175.00 represents a fair and reasonable market rate for Amy N. Carollo's in-house legal services to the Funds in this matter.

10.    Charles Ingrassia, in-house counsel for the Laborers' Funds, received a Bachelor of Science Degree from Radford University in 2002 and a Juris Doctor from the University of Illinois College of Law at Urbana-Champaign in 2006. He was admitted to the bar of the State of Illinois in November of 2006 and to the bar of the United States District Court for the Northern District in July 2007. In July 2007, he became in-house counsel for the Laborers' Funds.

11.    Based on the foregoing, $150.00 represents a fair and reasonable market rate for Charles Ingrassia's in-house legal services to the Funds in this matter.

3

12.     Exhibit 1 attached hereto sets forth the time expended to date by Fund Counsel on this matter.  As set forth in that Exhibit, we have expended 10.70 hours totaling $1,772.50 in attorneys' fees and $513.60 in expenses totaling $2,286.10.

I, the undersigned, certify under penalty of perjury that the foregoing is true and correct.


Date:   1/30/08

                                        Patrick T Wallace
                                        Patrick T. Wallace

4

Laborers Pension and Welfare Funds
11465 Cermak Rd.
Westchester, IL  60154


Invoice submitted to:
Roman Group



January 30, 2008


Invoice #10067


Professional Services

| | | | Hrs/Rate | Amount |
|---|---|---|---|---|
| 12/4/2007 | PTW | Telephone message to R. Girton, Telephone conference with  J. Fosco, fax to Girton. | 0.50 175.00/hr | 87.50 |
| 12/5/2007 | PTW | Prepare affidavit, indemnification agreement, fax to R. Girton. | 0.50 175.00/hr | 87.50 |
| 12/6/2007 | PTW | Review of check status; Conference with J. Fosco re: OT payment. | 0.40 175.00/hr | 70.00 |
| 12/11/2007 | PTW | Drafted Complaint; Telephone conference with  Lou at Local 6 | 1.00 175.00/hr | 175.00 |
| 12/10/2007 | PTW | Telephone conference with  J. Fosco; Fax to Fosco | 0.20 175.00/hr | 35.00 |
| 12/13/2007 | PTW | Drafted Complaint; Conference with Lou from Local 6 | 3.50 175.00/hr | 612.50 |
| 12/17/2007 | PTW | Drafted complaint; update report re: new suit | 1.50 175.00/hr | 262.50 |
| 12/12/2007 | PTW | Review of release; Conference with J. Jorgensen re: same; Telephone conference with C. Monaghan. | 0.30 175.00/hr | 52.50 |
| 12/19/2007 | PTW | Conference with J. Jorgensen; email to Power re: release. | 0.30 175.00/hr | 52.50 |
| 12/26/2007 | PTW | Letter to J. Fosco re: payment; update report; letter to Power. | 0.30 175.00/hr | 52.50 |


EXHIBIT
E-1

Roman Group

Page    2

| | | | Hrs/Rate | Amount |
|---|---|---|---|---|
| 1/29/2008 | PGL | Draft Motion for Entry of Default Judgmen,t Affidavit of Jim Fosco, Declaration of PTW, Notice of Motion and Prep Exhibits | 1.00 75.00/hr | 75.00 |
| 1/30/2008 | PTW | Edits to Motion for Entry of Default Judgment and supporting documents. | 1.20 175.00/hr | 210.00 |
| | | For professional services rendered | 10.70 | $1,772.50 |

Additional Charges :

| | | Amount |
|---|---|---|
| 12/18/2007 | Photocopies of Complaint, etc. | 9.60 |
| | Filing fee. | 350.00 |
| 1/7/2008 | Service of Summons and Complaint (3). | 154.00 |
| | Total additional charges | $513.60 |
| | Total amount of this bill | $2,286.10 |
| | Balance due | $2,286.10 |

## Timekeeper Summary

| Name | Hours | Rate | Amount |
|---|---|---|---|
| Paralegal | 1.00 | 75.00 | $75.00 |
| Patrick T. Wallace | 9.70 | 175.00 | $1,697.50 |

## CERTIFICATE OF SERVICE

The undersigned certifies that he caused copies of the foregoing Plaintiffs' Motion for Entry of Default Judgment in Sum Certain and to Compel an Audit to be served upon the following persons, via U.S. Mail, this 30th day of January 2008.

The Roman Group, Inc.
  and Friendship Janitorial Services, Inc.
c/o William H. Wentz, Registered Agent
184 Shuman Blvd., #250
Naperville, IL  60563

Randall L. Girton
11028 W. 167th Place
Orland Park, IL  60547

/s/ Patrick T. Wallace

5