# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| **LABORERS' PENSION FUND, et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | **Case No. 07 C 7097** |
| **v.** | ) | |
| | ) | **Judge MANNING** |
| **THE ROMAN GROUP, INC., an Illinois** | ) | |
| **corporation, FRIENDSHIP JANITORIAL** | ) | |
| **SERVICES, INC., an Illinois corporation, and** | ) | |
| **RANDALL L. GIRTON, individually,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION TO RECONSIDER RULE 54(B) CERTIFICATION

NOW COME Plaintiffs Laborers' Pension Fund and Laborers' Welfare Fund of the Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity and James S. Jorgensen, Administrator of the Funds (the "Funds"), by their attorneys, Patrick T. Wallace and Charles Ingrassia, and hereby submit this Memorandum in Support of Motion to Reconsider Rule 54(b) Certification.

The Funds filed their seven count Complaint on December 18, 2007. The three Defendants are The Roman Group, Inc., ("Roman Group"); Friendship Janitorial Services, Inc., ("Friendship") and Randall L. Girton ("Girton" and hereinafter, the Defendants will be collectively referred to as the "Defendants"). Counts I and II seek to collect money owed to the Funds pursuant to an audit for the period of June 28, 2006 through December 31, 2006. Counts III and IV seek to compel Roman Group and Friendship to submit benefit and dues reports for the period of August 2007 forward, conduct an audit for the period of January 1, 2007 forward and collect amounts owed

pursuant to that audit. Count V alleges that the Defendants violated the Illinois Wage Payment and Collection Act; Count VI alleges that the Defendants impermissibly converted union dues; and Count VII alleges that Girton committed fraud by paying covered employees with cash.

The Funds moved for default judgment on January 30, 2008. This Court issued a statement on February 21, 2008 ("Statement") finding the Defendants in default as to all counts. The Court also found that, based on Counts I and II, "the evidence submitted . . . establishes that the [D]efendants jointly and severally owe $92,953.91 in unpaid contributions, dues, interest, liquidated damages, and audit costs as well as $2,286.10 in reasonable attorneys' fees and costs." (Statement, p. 1.) However, the Court denied the Funds' request for Rule 54(b) certification on the judgment without prejudice.

This Court should grant the Funds' Motion to Reconsider Rule 54(b) certification because: (1) Counts I and II are distinct clams; and (2) there is no just reason for delay.[1]

## I.     Counts I and II are Distinct Claims for Relief

The claims the Funds seek to have certified are distinct claims for relief. The decision to certify is within the sound discretion of the district court. *Curtiss-Wright Corp. v. General Elec. Co.*, 446 U.S. 1, 10 (1980). The key inquiry is whether or not the claims sought to be certified are factually distinct from the remaining claims or whether there is complete factual overlap so that the remaining claims could generate multiple appeals on the same topic. *See Olympia Hotels Corp. v. Johnson Wax Developmental Corp.*, 908 F.2d 1363, 1366 (7th Cir. 1990); *Horn v. Transcon Lines, Inc.*, 898 F.2d 589,

---

1 This Court outlined three elements that need to be satisfied for Rule 54(b) certification – the third element being that the decision sought to be appealed finally decides a litigant's rights and liabilities. This Court's finding that the Defendants are joint and severally liable for the amount owed pursuant to the audit for June 28, 2006 through December 31, 2006 decided their rights and liabilities as to those claims with finality.

593 (7th Cir. 1990). The Seventh Circuit has made clear that some factual overlap is not decisive or fatal in determining whether claims are distinct for Rule 54(b) purposes so long as the facts do not completely overlap. *Olympia Hotels*, 908 F.2d at 366-68; *see Lawyers Title Ins. Corp. v. Dearborn Title Corp.*, 118 F.3d 1157, 1163 (7th Cir. 1997). Another relevant inquiry – though also not decisive – is whether the claims could be maintained as separate actions without running afoul of *res judicata*. *See Automatic Liquid Packaging, Inc., v. Jack E. Dominik*, 852 F.2d 1036, 1038 (7th Cir. 1988); *Olympia Hotels*, 908 F.2d at 1368. Thus, Rule 54(b) is not applicable when the factual overlap between claims is complete and the only possible difference is the legal theories on which they rely. *Olympia Hotels*, 908 F.2d at 1368; *see Lawyers Title Ins.*, 118 F.3d at 1163. Conversely, claims are distinct and Rule 54(b) is applicable when there is some (or even considerable) factual overlap so long as the overlap is not complete. *Olympia Hotels*, 908 F.2d at 1386.

This Court should certify the claims in Counts I and II because they are distinct from the remaining claims. First, an appeal of Counts I and II would not involve a review of the same facts as a potential appeal regarding Counts III and IV. In *Olympia Hotels*, the Seventh Circuit upheld the decision of the district court to certify some claims arising out of a contract while other claims arising out of the same contract had yet to be tried. 908. F.2d at 1366-68. The court heavily relied on the fact that the certified claims concerned conduct that occurred after the contract was signed, whereas the remaining claims concerned facts that occurred when the contract was first being negotiated. *Id.* The court concluded that despite considerable but not complete factual overlap, it was not a case where a party "merely gave different legal characterizations to the same facts." *Id.*

at 1367 (citing *A/S Apothekernes Laboratorium for Specialpraeparater v. I.M.C. Chemical Group, Inc.*, 725 F. 2d 1140, 1143 (7th Cir. 1984)).

Likewise, an appeal challenging Counts I and II would involve a distinct set of facts from an appeal challenging Counts III and IV. As in *Olympia Hotels*, the claims sought to be certified involve an entirely different period of time. Specifically, Counts I and II are based on monies owed to the Funds pursuant to an audit conducted for the period of June 28, 2006 through December 31, 2006; whereas Counts III and IV are based on an audit yet to be conducted for the period of January 1, 2007 forward. Obviously, each appeal would focus on separate audits and distinct factual circumstances on which those audit findings are based, such as different jobs performed by the Defendants and the use of different employees. Therefore, while there is some factual overlap (i.e., same contract and Trust documents), an appeal of Counts I and II will not involve "the same interpretation of the same operative documents" as an appeal of Counts III and IV.

Counts I and II are equally distinct from Counts V, VI and VII. Those claims bear no significant relationship to the claims regarding money owed to the Funds pursuant to the audit for June 28, 2006 through December 31, 2006. The final three claims involve an entirely distinct time period, August 2007 forward. Moreover, those remaining claims are not based on an audit finding, but rather, require a finding that the Defendants knowingly withheld wages from union employees' paychecks rather than remitting those amounts in violation of the Illinois Wage Payment and Collection Act; that the Defendants wrongfully converted union property for their own use; and that Girton committed fraud by paying employees of Roman Group by cash for hours worked.

Therefore, any appeal stemming from these latter claims will involve an analysis of a distinct set of facts from an appeal of Counts I and II.

The Court has also expressed concern regarding multiple appeals. The Funds believe that this concern is unfounded in this case. As with most ERISA collections actions, the primary legal issue presented in this case is whether individuals have performed covered work obligating the Defendants to submit payment of benefit contributions and dues. The Defendants have not defended this case, which is why the Funds sought and obtained default judgment on Counts I and II. However, even if Defendants had responded to the Complaint, Roman Group could not contest the obligation to submit benefit contributions as it is clearly a signatory and submitted monthly contribution reports to the Funds since signing the contract. Defendants would also not likely contest the Funds' assertion that Friendship is an alter-ego. Although not part of the record, the Funds had numerous conversations with Randall Girton before this suit was commenced in which Girton conceded that he had paid Roman Group employees through Friendship to avoid payment of benefit contributions even though the employees were performing covered work for the Roman Group.[2] Fund Counsel had also worked with Girton in securing payment of receivables due to the Roman Group from general contractors to pay amounts due to the Funds. Girton and the corporate Defendants ultimately chose to stop responding to the Funds' attempts to resolve these issues short of litigation. They have further failed to answer the Complaint and have now been found in default in this case. Thus, Defendants had full knowledge of this matter well before the Funds filed suit, conceded (to the Funds) that the Funds' legal position

---

2 The Funds suspect that Girton started paying wages through cash disbursements to limit payment of benefit contributions after the Funds "blew the whistle" on the Friendship scheme.

was correct and have thrust their heads into the sand rather than defending the case. Thus, there is little risk that Defendants will try to appeal the default judgment entered by this Court to the Seventh Circuit.

Moreover, there is a strong policy reason to support granting 54(b) certification. The Funds sought 54(b) certification of the judgment because the time period of the audit is defined and unrelated to the time period in the other pending counts. Certification should be granted so the Funds can commence collection proceedings. To hold otherwise runs the risk of rewarding Defendants in this case and others who could obtain delay through their inaction. Defendants in ERISA collection cases often willfully refuse to participate in the legal process using delay as there only defense to otherwise unequivocal obligations to submit benefit contributions and dues. For example, the Funds are sure the Court is familiar with contractors who fail to respond to a complaint, an order for an audit and even an order for rule to show cause and only submit to an audit after being brought into court on a body attachment. Often this delay is used to secure and dispense assets of the corporation for purposes other than the payment of benefit contributions. The Funds understand the Court's reluctance to certify the judgment and avoid multiplicity of appeals. However, failing to enter 54(b) judgment in a case where an audit for a discrete and defined period of time is already complete may indirectly provide another incentive for Defendants to use delay to their advantage.

Finally, the Funds would not have violated principles of *res judicata* if they decided to bring Counts I and II in a separate action.[3] The Funds brought all of their

---

3 The doctrine of *res judicata* requires litigants to join all legal theories in a single suit that concern a single transaction. *Perkins v. Board of Trustees*, 116 F.3d 235, 236 (7th Cir. 1997). A single transaction is one based on a common core of operative fact, though "if the wrongful events are separated by time and function, multiple suits are permissible . . . ." *Id.* at 236. In *Perkins*, the Seventh Circuit held that *res*

claims against the Defendants in the interest of judicial economy. As a further policy consideration, if a party is prejudiced for consolidating claims that are not required to be consolidated pursuant to the doctrine of *res judicata*, litigants will be encouraged to bring separate actions for those claims. The effect of this will severely drain judicial resources as there will be an increase in cases before the District Court as well as the risk of multiple appeals.

## II.    No Just Reason for Delay

There is no just reason for delaying certification of Counts I and II and refusing to certify those claims will be inequitable to the Funds. This Court should consider principles of equity when determining if there is a just reason for delay. *See To-Am Equipment Co. v. Mitsubishi Caterpillar Forklift*, 1996 U.S Dist. LEXIS 354, at *3 (N.D. Il. Jan. 17, 1996).

As with any litigant, the Funds are naturally eager to recover the money they are owed from the Defendants. *See Lawyers Title Ins.*, 118 F.3d at 1163. If the claims are not certified, the Funds will be prevented from immediately pursuing post-judgment proceedings to collect the damages stemming from Counts I and II, which will decrease the chance of a full recovery. As a result, the Funds will be prejudiced merely because they chose to consolidate all of their claims in the interest of judicial economy. To allow resolution of Counts I and II to be indefinitely delayed because distinct and unrelated claims remain would be to allow the "tail to wag the dog." *See id.*

---

*judicata* did not apply to separate suits alleging discrimination based on the same civil service exam because the plaintiff had taken the exam on two different occasions. *Id.* at 235-37. Thus, a decision on the merits for the defendant regarding discrimination stemming from the first exam would not mean that the defendant would prevail in the second suit regarding the second exam. *Id.* at 237. Likewise, the claims sought to be certified involve a different audit period than the remaining claims. If the Defendants were to succeed on the merits regarding the audit period from June 28, 2006 through December 31, 2006, it does not follow that they would succeed in a separate suit based on the audit period for January 1, 2007 forward.

Moreover, the Defendants have not proffered *any* just reason for delaying certification of Counts I and II.  For example, if certification will prejudice the Defendants, they can seek relief under Rule 62(h), which provides for a stay of Rule 54(b) judgments.  *To-Am*, 1996 U.S Dist. LEXIS 354, at *5-6.  However, the Defendants have failed to make a single argument that would justify delay. *See id.*  Finally, as discussed above, failing to certify claims that do not run afoul of *res judicata* would serve as an incentive to avoid consolidating claims and therefore hinder judicial economy.

**CONCLUSION**

For the above-outlined reasons, the Funds respectfully request that this Court grant its Motion to Reconsider Rule 54(b) Certification.

February 26, 2008

Respectfully submitted,

Laborers' Pension Fund et al.,

By:     /s/ Charles Ingrassia

Patrick T. Wallace
Charles Ingrassia
Office of Fund Counsel
111 W. Jackson Blvd., Suite 1415
Chicago, IL 60604
(312) 692-1540

## CERTIFICATE OF SERVICE

The undersigned certifies that he caused copies of the foregoing Motion to Reconsider Rule 54(b) Certification to be served upon the following persons via U.S. Mail or electronic notification this 26th day of February 2008.

The Roman Group, Inc.
and Friendship Janitorial Services, Inc.
c/o William H. Wentz, Registered Agent
184 Shuman Blvd., #250
Naperville, IL  60563

Randall L. Girton
11028 W. 167th Place
Orland Park, IL  60547

/s/ Charles Ingrassia